## Frederick Klopf v. Western Union Telegraph Company.

### No. 1695. Decided May 8, 1907.

**1.—Telegram—Delivery—Diligence—Misdirection.**

A telegraph company maintaining an office in a city from which it was accustomed to deliver messages in the suburbs, received a telegram addressed to a suburban resident whose name and address were in the city directory, though living beyond its corporate limits. The message gave as address another suburb, under separate municipal government, where, an extra charge for suburban delivery being paid, the company sought for but failed to find such person. Held, that the misdirection, though material as to the question of diligence, did not, as matter of law, excuse the failure to make delivery nor justify an instruction to find for defendant. (Pp. 540–542.)

**2.—Same—Case Distinguished.**

Western Union Telegraph Company v. Swearingen, distinguished as a case where addressee neither resided nor was found within the limits in which defendant contracted to make delivery. (P. 542.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Klopf sued the telegraph company, and appealed from a judgment for defendant. On its affirmance he obtained writ of error.

*Coke, Miller & Coke,* for plaintiff in error.—Duty to deliver personal and address subordinate to person. Western U. T. Co. v. Mitchell, 91 Texas, 454.

*Hume, Robinson & Hume, N. G. Kitterel, Jr., N. L. Lindsley* and *Geo. Fearous,* for defendant in error.—The evidence did not justify the inference that the telegrams were addressed to Houston, Texas, and that appellant could have been found at Houston, Texas, and it was not shown that defendant contracted to deliver the telegrams, or either of them, elsewhere than in Houston Heights. Western U. T. Co. v. Byrd, 79 S. W. Rep., 40; Western U. T. Co. v. Swearingen, 67 S. W. Rep., 767, 95 Texas, 420; Western U. T. Co. v. Smith, 88 Texas, 13.

WILLIAMS, Associate Justice.—The district judge instructed the jury to return a verdict for the defendant in this action, brought by plaintiff in error, to recover of defendant in error damages for delay in delivering several telegrams relating to the sickness and death of Mr. Clampit, the father of plaintiff's wife; and the resulting judgment was affirmed by the Court of Civil Appeals. The telegrams were sent by Roy Clampit, from El Campo, the first being addressed to "Mr. F. Klopf, Houston, Texas," with the notation on it, "lives on Ho. hites," meaning Houston Heights, and the second being addressed to "Mrs. Maggie Klopf, Houston Heights, Houston, Texas." There is no direct evidence showing by whom the reference to Houston Heights was put on the first message, but, as the sender testified that, when he delivered it to the operator at El Campo, the latter inquired as to Klopf's resi-

dence, and that the witness replied that he did not know it, but that it was out towards Houston Heights, it might be inferred that the notation was not then on the paper and was added by the agent. The second, however, was addressed as stated when delivered to the defendant's operator.

Houston Heights is spoken of as a suburb of Houston, but has a corporate government, with corporate limits of its own, separated from those of Houston by intervening territory. Vick's Park, in which Klopf resided, is also a suburb of Houston, not within its limits nor those of Houston Heights, but between the two and adjoining the latter. Streetcars run regularly from the city to Houston Heights, passing Vick's Park within a few blocks of plaintiff's residence. The defendant has an office only in Houston, and from it delivers messages in the territory in question upon payment of an extra charge to cover car fare, and this charge was paid in advance by the sender of the messages involved in this case. Klopf's name and the place of his residence were entered upon the Houston directory, which the defendant used for the purpose of finding persons for whom it received messages at its Houston office. When the dispatches in question were received at Houston the defendant's messenger made several efforts to find the addresses by inquiring at some of the prominent places in Houston Heights, but, so far as the record discloses, did not consult the directory or attempt to find them elsewhere.

The Court of Civil Appeals held that the contract, implied from the messages giving the address at Houston Heights, was, on defendant's part, to make delivery there, and not elsewhere; and that, as the parties did not live, and were not to be found there, there was no right of action. We think this is an incorrect view of the law. Under it the defendant would have been under no obligation to make delivery anywhere but within the corporate limits of Houston Heights, even if it had known the residence of the addressees at some other place within its delivery limits. So restricted a view of its obligation can not be sound. Its duty was to be performed from its office in Houston, to which the messages were transmitted, and that duty was to use reasonable diligence to effect such delivery as by its course of business it held itself out as undertaking to make from that office. The further address was merely a direction to aid it to find the persons to whom delivery was to be made, and did not necessarily define the extent of its duty. (Western U. T. Co. v. Mitchell, 91 Texas, 459; Western U. T. Co. v. Smith, 93 Ga., 635; Western U. T. Co. v. Patrick, 44 Am. St. Rep., 90.)

The contract arising from the acceptance and transmission of telegrams to a particular office is to use the degree of diligence just stated, to deliver them to the addressees within the territory in which the company undertakes, for the charges exacted, to make such delivery; in other words, to treat them as it treats others like them.

The evidence tends to show a general custom of the defendant to make deliveries throughout the territory in which plaintiff and his wife resided, and this defined the extent of its undertaking when, upon payment of its customary charges for like services, it accepted and transmitted the messages. Of course, there may be a special contract for a delivery beyond that which is implied from the course of the business,

and the company's obligation in such cases depends upon the special arrangement made. But this is not, or, at least, the evidence does not show it to be, such a case.

In the case of Western Union Telegraph Company v. Swearingen (95 Texas, 423) the message was transmitted for delivery to the company's office at Comanche, and the allegation was of a contract to deliver at that place; and, as the addressee neither resided nor was to be found within the limits in which the defendant undertook to deliver messages, it was held that no breach of the contract alleged was shown. The further allegation of a special arrangement to deliver at Swearingen's residence in the country was not sustained by the evidence. It was not a° case like this, in which the course of the company's business was, for the charges paid, to deliver messages to persons generally within territory where the addressees were to be found.

While it is true that the particular address given did not conclusively determine the extent of the obligation of the company to use diligence to make delivery, it is also true that such address does materially affect the question whether or not the diligence employed was sufficient. The search for the addressees was thereby directed to a particular part of a populous community, and this is a fact which must necessarily be considered in determining what steps should have been taken in the effort to find them. Considering all the circumstances, on which we shall make no further comment, we are of the opinion that the question of diligence was one for the jury, and that it was improper to instruct a verdict.

We are not to be understood as holding that there can be a recovery upon the first telegram, which was addressed to Mr. Klopf, and informed him that "your father is very low," for the suffering of Mrs. Klopf resulting from her inability to attend the funeral, without further evidence than appears, of notice to defendant of the purpose to convey the intelligence to her. The second telegram was addressed to her, and informed her that her father was dead, and summoned her to come at once, and the difficulty referred to does not exist with reference to it.

The judgments will be reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*