## WESTERN UNION TELEGRAPH COMPANY v. W. A. PARSLEY.

Decided May 27, July 1, 1909.

**1.—Damages—Mental Anguish—Telegraph—Lex Loci Contractus.**

The law of the State, from which a telegram is sent, determines whether or not the complaining party is entitled to recover damages for mental anguish, though the place of delivery and the negligence in respect thereto were in another State.

**2.—Foreign Law—Evidence—State of Oklahoma.**

Proof by decisions of the United States courts in the Indian Territory of the law there prevailing as to the right to recover damages for mental suffering, was insufficient to establish the fact that the same rule prevailed in the same locality after it had been united with the Territory of Oklahoma and made the State of Oklahoma.

ON MOTION FOR REHEARING.

**3.—Foreign Law—Statute—Arkansas.**

The statute of Arkansas permitting recovery against a telegraph company for mental suffering, and decisions of the courts of that State thereon (Act of March 7, 1903; Kirby's Dig., sec. 7947; Western U. Tel. Co. v. Woodward, 105 S. W., 579; Arkansas & L. Ry. Co. v. Lee, 79 Ark., 448, 96 S. W., 148) considered and held not to overcome the presumption that its laws were the same as those of Texas in this respect so conclusively as to authorize the court to direct a verdict on the theory that there could be no recovery in Arkansas for negligent delay in the delivery of a telegram sent from a point in that State to one in the State of Oklahoma, where the negligence was wholly in the handling and delivery of the message in the latter State.

**4.—Foreign Law—Political Changes—Presumption of Continuance—Creation of State.**

The presumption that laws once established over territorial limits continue in spite of political changes altering the form of government and the sovereignty, held not to apply to the law recognized by the decisions of the courts in the Territory of Oklahoma and the lands known as "Indian Territory," after the union of same into one political body by creating the State of Oklahoma, in the absence of any enactment continuing such former laws in force.

Error from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Geo. H. Fearons* and *Todd & Hurley,* for plaintiff in error.—The court erred in refusing to direct the jury to return a verdict for defendant as requested by defendant, because the undisputed evidence showed that plaintiff's cause of action, if any, arose in Oklahoma, and was governed by the laws of Oklahoma, and under such laws the plain-

tiff could not recover for mental anguish.  Butner v. Western U. Tel. Co., 37 Pac., 1087; Thomas v. Western U. Tel. Co., 25 Texas Civ. App., 398; Western U. Tel. Co. v. Ford, 92 S. W., 528, 77 Ark., 531; Arkansas & La. Ry. Co. v. Lee, 96 S. W., 148, 79 Ark., 448; Peay v. Western U. Tel. Co., 43 S. W., 965, 64 Ark., 538; 1 Lewis' Suth., Stat. Const., secs. 20, 26; 13 Am. & Eng. Ency. Law, p. 1051, sec. 3; 2 Joyce, Elec. L., sec. 828, note 51; Butner v. Western U. Tel. Co., 37 Pac., 1087; Missouri, K. & T. Ry. Co. v. Wise, 109 S. W., 112, 101 Texas, 459; Chicago, R. I. & P. Ry. Co. v. Thompson, 100 Texas, 185; St. Louis, I. M. & S. Ry. Co. v. McCormick, 71 Texas, 660.

The undisputed evidence shows that under the law both of the Indian Territory and the Territory of Oklahoma, before they were united as the State of Oklahoma, no recovery could be had in either Territory for damages for mental anguish unaccompanied by physical injury.  In the Indian Territory the laws of the United States and the judicial construction of the Federal Courts governed, and those courts uniformly hold that such damages are not recoverable.  2 Joyce Elec. Law, sec. 828, note 51, pp. 1314, 1315, and cases cited; Western U. Tel. Co. v. Wood, 57 Fed., 471.

In the Territory of Oklahoma the question was settled in the case of Butner v. Western U. Tel. Co., 37 Pac., 1087.  That case was produced in evidence on the trial hereof in the court below.  Such being the law in the Territories before statehood, the law as it existed before the political change merging the two territories into one State will be presumed to continue the same, and it was not necessary for appellant to prove that there was no subsequent change of the law by statute of the State or judicial construction of the State courts. "Laws, customary or statutory, continue in force though they originate under a sovereign whose power and political jurisdiction has ceased." 1 Lewis' Suth. St. Const., sec. 20.  The Arkansas statute creates, gives, confers a right which did not exist at common law; therefore it is purely local and can have no extra-territorial effect, and an action can not be brought or maintained "under" or by virtue of this statute in another State, at least not in Texas, where there is no similar statute.  St. Louis, I. M. & S. Ry. Co. v. McCormick, 71 Texas, 661; Chicago, R. I. & P. Ry. Co. v. Thompson, 100 Texas, 185.

*Hart, Mahaffey & Thomas,* for defendant in error.—The contract, and plaintiff's rights thereunder, are governed by the laws of the State of Arkansas, the place of the contract.  Western U. Tel. Co. v. Woodard, 105 S. W., 579; Western U. Tel. Co. v. Cooper, 29 Texas Civ. App., 591; Western U. Tel. Co. v. Waller, 96 Texas, 589; Western U. Tel. Co. v. Garrett, 46 Texas Civ. App., 430.

There being no proof as to the laws of Indian Territory and the State of Oklahoma, they are presumed to be the same as the laws of Texas.  Burgess v. Western U. Tel. Co., 92 Texas, 125.

HODGES, ASSOCIATE JUSTICE.—The defendant in error recovered damages against the plaintiff in error in the sum of $500 for mental anguish suffered in consequence of the alleged negligent failure in the transmission and delivery of a telegram.  Defendant in error resided

at Haworth, Oklahoma. On the 7th day of March, 1908, his brother, who resided at or near Tuckerman, Arkansas, sent him a message informing him that their sister at that place was not expected to live, and for him to come at once. The message was not delivered until about five o'clock p. m. the next day. The jury found, and we think the testimony is sufficient to support the finding, that the failure to deliver the telegram was due to. the negligence of the servants of the telegraph company at Haworth; that had it been delivered with proper diligence the defendant in error could and would have reached his sister before her burial.

The principal issue presented in this court is embraced in the first assignment of error, which complains of the refusal of the court to direct a verdict in favor of the telegraph company. It is claimed that the facts show that the cause of action, if any, arose in Oklahoma, and the right of recovery is governed by the laws of that State; that under the laws of Oklahoma no recovery can be had for mental anguish in such cases. We do not agree to the contention that in cases like the present the right of recovery asserted by the addressee of a delayed telegram is governed by the laws of the State where the message is to be delivered. On the contrary, we think both the courts of this State and other authorities of high standing support the conclusion that the law of the State from which the message is sent determines whether or not the complaining party is entitled to recover damages for mental anguish. Western U. Tel. Co. v. Waller, 96 Texas, 589, 74 S. W., 751; Western U. Tel. Co. v. Cooper, 29 Texas Civ. App., 591, 69 S. W., 427; Telegraph Co. v. Garrett, 46 Texas Civ. App., 430, 102 S. W., 456; Telegraph Co. v. Buchanan, 35 Texas Civ. App., 437, 80 S. W., 561; Ligon v. Western U. Tel. Co., 46 Texas Civ. App., 408, 102 S. W., 430; Western U. Tel. Co. v. Woodard, 105 S. W., 579; 2 Wharton Con. of Law, sec. 471f. The telegram in this suit having been sent from a point in the State of Arkansas, where a recovery for mental anguish is now permitted, we think the laws of that State should be looked to as determining the rights of the injured party.

But if it should be held otherwise, and that his rights are to be determined by the laws of the State of Oklahoma, we do not think the evidence relied upon as to what the laws of that State were at the time this message was sent and received, or the case tried in the court below, is of such character as to authorize the court to assume as a matter of law that the laws of that State denied a recovery for mental anguish in telegraph cases. The evidence consisted of a decision rendered by the Supreme Court of the Territory of Oklahoma in 1894, thirteen years before the incorporation of Oklahoma into the Union, with the Indian Territory, as a State, and fourteen years before this message was sent. Haworth is situated in that portion of the present State of Oklahoma which was formerly a part of the Indian Territory, and was therefore never a portion of the Territory of Oklahoma, and its locality was not affected by the decision rendered in the case referred to. In the absence of proof as to what the law of the State of Oklahoma was at the time of the trial, it will be presumed that it was the same as that of the forum. Burgess v. Telegraph Co., 92 Texas, 125, 46 S. W., 794; Western U. Tel. Co. v. Lannom, 119 S. W., 910,

recently decided by this court. The facts adduced at most furnish only a basis for an inference as to what the law of the present State of Oklahoma was at the time of the trial, and is by no means such conclusive proof as would authorize the court to give a peremptory instruction.

The remaining assignment raises a question predicated upon an issue of fact which we think was settled by the verdict of the jury. The judgment of the District Court is accordingly affirmed.

### ON MOTION FOR REHEARING.

In its motion for rehearing the plaintiff in error says that it does not claim that the right of recovery in this case is governed by the laws of Oklahoma solely because the cause of action arose in that State, but does contend that the right is governed by the statute laws of Arkansas, and that under that statute such actionable negligence is a tort and not a breach of contract, and the right of recovery is limited to negligence occurring within the State of Arkansas. It is argued that the courts of Arkansas predicate the right to recover for mental anguish as an element of actual damages in this class of cases upon the ground that the negligence complained of in failing to promptly deliver the message is a tort, not a breach of contract, and hold that the cause of action, if any, arises in the State where the negligence is committed, and for that reason the courts of this State can not look to the statute of Arkansas for the purpose of determining any of the rights of the defendant in error to recover in this case. Reduced to its final analysis, the argument is that this court should not award damages for mental anguish, because the courts of Arkansas would not do so under the same state of facts; that if this suit were brought in that State no recovery could be had, for the reason that the statute of Arkansas had not been violated. It must be conceded that under the decisions of this State the addressee for whose benefit a telegram is sent is such a party to the contract by which the telegraph company undertook to transmit and deliver the message as to be entitled to recover damages for mental anguish for a breach of the contract in failing to promptly deliver the message. The contractual duty of the telegraph company when it accepts a message for transmission is to use reasonable diligence to deliver it to the addressee. Klapf v. Western U. Tel. Co., 100 Texas, 540, 101 S. W., 1072. A failure to perform that duty is a breach of the contract, for which the addressee may sue and recover damages for mental anguish. This is regarded as the settled law in this State, as a result of the judicial construction adopted by our courts in applying the general rules of commercial law regulating the rights of parties to that class of contracts, without reference to the local laws of any State. It must also be admitted that, by the rules adopted in this State and by the great weight of authority in other jurisdictions, the rights and duties of parties to interstate contracts are to be determined by the law of the State where the contract is made, unless it appears that the intention of the parties was otherwise. The laws of the particular State where the contract is made are as much a part of the agreement as if their

provisions were expressly made a part of it. 1 Wharton on Conflict of Laws, sec. 1; 9 Cyc., 582. In view of the well-established rule that the *lex loci contractus* will, until the contrary is shown, be presumed to be the same as the law of the forum, the burden rested upon the telegraph company in this suit to allege and prove that by the laws of the State where this cause of action arose and of that State where the contract was made and in part to be performed there could be no recovery for mental anguish. If it be not shown that a recovery would be denied under the laws of Arkansas, it is wholly immaterial what the laws of Oklahoma be. But if the former should be proved, and the denial of a recovery there should be based upon the grounds claimed by the plaintiff in error in its brief, that the negligence complained of was a tort committed beyond territorial jurisdiction of the courts of Arkansas, then plaintiff in error would be under the further duty of showing that, under the laws of Oklahoma, the place where the dereliction occurred, there could be no recovery for such negligence. In as much as the assignment now under consideration, and the only one raising the questions here discused, complains of the refusal of the court to give a peremptory instruction to find for the defendant, it follows that the evidence essential to a discharge of the burden resting upon the plaintiff in error must be such as would authorize the court to assume as a matter of law that the facts in issue had been established by the testimony offered. In support of its pleadings the plaintiff in error offered in evidence section 7947 of Kirby's Digest of the Laws of Arkansas, which is as follows: "All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages; and in all actions under this section the jury may award such damages as they conclude resulted from the negligence of the said telegraph company." Act March 7, 1903. It was admitted that prior to the passage of this law the courts of Arkansas had by judicial construction denied a recovery of damages for mental anguish unaccompanied by physical suffering in telegraph cases.

The plaintiff in error also offered in evidence a decision of the Supreme Court in the case of Western U. Tel. Co. v. Ford, 92 S. W., 528, rendered in 1906. In that case the plaintiff in the suit was the addressee in the telegram, and resided in Texarkana, Arkansas. Her sister died in Missouri, and a niece of the plaintiff delivered to the defendant telegraph company at Joplin, in that State, a message notifying plaintiff of her sister's death and telling her to come to Carthage. The message was received at the Texarkana office, but there was negligence in delivering it, by which the plaintiff failed to reach Carthage in time to attend her sister's funeral. Suit was instituted in the courts of Arkansas, and a recovery for mental anguish was permitted. It was conceded, in the discussion of the case by the court, that under the laws of the State of Missouri no damages could be had for mental anguish unaccompanied by physical suffering; but on account of the statute law in force in the State of Arkansas, and the fact that the negligence complained of occurred in that State, the court permitted a recovery. In discussing the case the court said:

"It will be observed that our statute does not make the right to recover such damages depend upon any contractual relation existing between the telegraph company and the person injured by its negligence, but declares in broad terms that all telegraph companies doing business in the State shall be liable for mental anguish for negligence in receiving, transmitting or delivering messages. In fact, the right of an addressee to recover damages at all is not based on contract, as none exists." The court then proceeds to quote from Thompson on Electricity, where the rights of the addressee are placed upon the grounds of the public duty which the telegraph company owes to any person beneficially interested in a message. After referring to the case of Peay v. Western U. Tel. Co., 64 Ark., 538, 43 S. W., 965, in which the doctrine was first unequivocally announced in that State that mental anguish unaccompanied by physical suffering would not be allowed as an element of damages for failure to deliver a telegraphic message, the court proceeds: "The present statute was obviously enacted by the Legislature in order to change the rule in the Peay case as to the right to recover such damages; and if we indulge in any speculation at all as to the motive and intention of the lawmakers, we must hold that the statute was passed with the full knowledge of the decision of this court, holding that no such damages were recoverable in this State for negligence in delivering a message here which had been sent from a State where such damages were allowed." Again the court says: "We need not and do not decide what would be the effect of the statute if the act of negligence complained of had occurred in the State of Missouri, whence the message was sent. That question does not arise in this case." This was all of the evidence offered by the plaintiff in error as to what were the laws in the State of Arkansas, either statutory or that prevailing by judicial construction.

In rebuttal the defendant in error offered in evidence the case of Telegraph Co. v. Woodard, 105 S. W., 579, decided by the same court more than a year later. In that case it appeared that the suit was by the addressee of the telegram sent from a point in Tennessee to Stuttgart, Arkansas. The message was transmitted by way of St. Louis, Missouri, and thence to Arkansas. The testimony established the fact that it never reached Arkansas, and for this negligence the plaintiff, the addressee in the telegram, asked and obtained a recovery for mental anguish. In the opinion rendered the court referred to the Ford case and said: "While the right to recover by the addressee is almost universally recognized in America, yet the grounds of recovery are variously sustained, some of the courts holding that the contract of the sender inures to the benefit of the addressee, and others holding that it is an action of tort, and others holding that it is a breach of a public duty. . . . It is argued therefrom that no tort occurred and no negligence is shown to have been committed in Arkansas, and that consequently no action can be maintained here. A somewhat similar question was presented in the Ford case, supra. A message was sent from Missouri, where the law does not authorize recovery of damages for mental anguish; but the evidence in that case showed that the telegram was transmitted to Arkansas and that

the negligence occurred in that State. The court did not go beyond that point in determining the principle controlling it." Reference was made to the case of Arkansas & L. Ry. Co. v. Lee, 79 Ark., 448, 96 S. W., 148, where a telegram was sent from a point in Arkansas to be delivered in Louisiana and the negligence occurred in Arkansas. The court held that the negligence was in the transmission in Arkansas, and not in Louisiana, and did not go beyond the facts in determining what would be the effect had there been negligence in delivery in Louisiana. It argues, therefore, that the case then under consideration presented a different phase of the question from any that had theretofore been before the courts of that State. It then proceeds to cite numerous Tennessee authorities holding mental anguish recoverable as an element of damages, and proceeds: "It will be seen by the above cited cases Tennessee was one of the States which sustained such recovery by judicial construction, and such actions are not dependable upon statute as they are in Arkansas. But the statutory action is intended to place in force in this State substantially what is known as the mental anguish doctrine in the States where it prevails by judicial construction." After citing Western Union Tel. Co. v. Hollingsworth, 102 S. W., 681, it then proceeds to quote at length from Wharton on the Conflict of Laws regulating the rule for the construction of contracts relating to interstate messages, and concludes: "Applying this principle here, it is not material in this case which view is generally taken as to the action, whether ex delicto, ex contractu or statutory, for the action must be sustained by reason of the Tennessee contract. It is held in Tennessee that the addressee recovers upon contract of the sender inuring for his benefit, and that mental anguish is a recoverable element in such contracts." After citing numerous authorities the court continues: "In this case, although there may be no statutory action arising in Arkansas, for the reason that no negligence has occurred actionable under the statute, yet here is a contract which, under the laws of Tennessee, where it was made, between the sender and the telegraph company, inured to the benefit of the addressee, and one element of the contract was the right to recover [for] mental anguish. That action is under the principles heretofore quoted from Wharton, which seem fully supported by the authorities sustainable here; and that is as far as the court is required to go in this case."

This is all of the testimony contained in the record as to what is the law of the State of Arkansas on this subject. From this it is apparent that by the statutory law of that State mental anguish in telegraph cases can now be considered as an element of actual damages, and the rule therefore prevailing by judicial construction is abolished. It follows, therefore, when the message involved in this suit was delivered to the plaintiff in error and it undertook to transmit and deliver it to the defendant in error, among the substantive provisions of the contract was the right of the addressee to recover damages for mental anguish for a failure in the performance of the duty so undertaken. But it is insisted that the courts of Arkansas hold and have established the precedent, that where the negligence occurs beyond the limits of that State their statutory provisions do not apply and no recovery can

there be had for mental suffering by the addressee. Without under-
taking to say what bearing such a ruling, if made, would have upon
the determination of this particular case, we feel justified in holding
that so far as the evidence adduced shows those courts have not an-
nounced such a doctrine since the enactment of the statute referred
to. In neither of the two cases, nor in any of those referred to in the
opinions incorporated in the record, has that particular question been
decided by them. In the Ford case, the one relied on by the plaintiff
in error for authority upon that proposition, the facts were unlike
those here involved, and the court decided nothing except the issues
directly presented. It is true it was stated in the course of the opin-
ion that the right of the addressee to recover damages (referring to
any class of damages) for negligence in failing to deliver a tele-
graphic message was not based upon any contractual relations of the
parties, for the reason that the addressee had no contract with the
company for the transmission of the message. But in a much later
case involving a somewhat different state of facts the same court does
recognize such contractual relations, and there places the right of the
addressee to recover solely upon that ground. Plaintiff in error con-
tends that this was due to a spirit of interstate comity. The court,
however, did not give that as a reason for the ruling made, but justi-
fied its conclusions by referring to the general principles of law per-
taining to the construction of contracts. But assuming that it was
actuated by a spirit of comity in giving effect to a Tennessee contract,
this would of itself indicate that the rule prevailing in Tennessee was
in harmony with the recognized policy in Arkansas. In the recent
case of Beauchamp v. Bertig, 119 S. W., 76, decided by the Supreme
Court of Arkansas, it is held that one of the recognized rules adopted
by courts in assuming jurisdiction and awarding relief upon principles
of comity is that relief will always be refused when the grounds upon
which it is sought contravene some established and important policy of
the State of the forum.

In disposing of this issue of fact, we think it is sufficient to say that
the evidence fails to show that the precise question here involved has
ever been adjudicated by the courts of Arkansas, and that it can not
be said that any well-defined policy has there been adopted opposing
the rule in this State. It would be premature for this court to now
anticipate such a holding. It will be time enough to yield our convic-
tions concerning the general rules applicable to the interpretation of
contracts, and for the ascertainment of the rights and obligation of
the parties thereto, when the courts of that State have unequivocally
adopted a contrary policy.

But assuming that the contention of the plaintiff in error is correct
and that his action must be regarded as one founded exclusively upon
a tort committed in the State of Oklahoma in negligently failing to
deliver the message within a reasonable time, still, upon principles of
interstate comity, the defendant in error would be entitled to recover
damages for mental anguish, unless it be shown that by the laws of
that State no such damages are recoverable in cases of this character
when not accompanied by physical injury. As evidence of the law
now existing in the State of Oklahoma upon that subject, the plaintiff

in error refers to a decision rendered by the Supreme Court of the Territory of Oklahoma in 1894, many years before the present State was organized, refusing recognition of what is commonly called the mental anguish doctrine as it obtains in this State, and also offered parol evidence to the effect that the United States District and Circuit Courts and the Circuit Courts of Appeal, so far as they have acted, have likewise repudiated that doctrine. Upon the sufficiency of these facts the plaintiff in error relies for support of its contention that the laws of the present State of Oklahoma do not permit recovery for mental suffering unaccompanied by physical injury. It is argued that, having shown the rule of law adopted by these courts in the two territories of which the present State of Oklahoma is composed during their territorial existence, it will now be presumed that the same rule of judicial construction was continued after the organization of the State, and that the same policy is now adhered to by the State courts of Oklahoma. In support of that proposition we have been referred to the last edition of Sutherland on Statutory Construction, sections 20 and 26. In the first section referred to the author quotes from a decision rendered by Chief Justice Marshall in American Ins. Co. v. Canter, 1 Pet., 541, 7 L. ed., 242, in which the court holds that when conquered territory is confirmed by treaty the ceded territory becomes a part of the country to which it is annexed, either on the terms stipulated in the treaty or such as the master may impose. On such a transfer the relations of the inhabitants toward each other undergo no change; there is merely a change of the sovereign to which they owe allegiance. The author then announces the rule in such cases to be that the laws, usages and regulations in force at the time of the conquest remain in force till changed by the new sovereign. The decision from which the quotation is made in the text was a case in which the validity of a court created under the territorial laws of Florida before its admission into the Union as a State was involved. Florida had formerly been a province of Spain and was ceded to the United States by that government in 1819. The court was there discussing the political status of a province, and integral part of a foreign country, after its transference to the new sovereignty of the United States. There is no analogy between such conditions and those which obtain when a territorial government is abolished and a sovereign State formed. The latted involves, to a certain extent at least, the elements of dissolution and reorganization, necessarily producing changes in the relation of the inhabitants toward each other. It is not merely the shifting of a political organization from one sovereign to another. It is clear that neither the author nor the court from which he quotes had in mind the political mutations involved in the organization of a territory into a State under our system of government.

In section 26 the author says that "only a political change is produced by the admission of a State into the Union. . . . The territorial laws enacted by Congress or the local Legislature continue in force so far as they are consistent with the new condition of statehood and the provisions of the State Constitution." The adjudicated cases referred to in the notes do not support the inference deduced by the plaintiff in error from the text quoted. They show that in each in-

stance where it was sought to invoke the authority of a territorial law it has been specially continued in force by an ordinance, or some affirmative declaration by the convention forming the Constitution of the new State. In fact, in every case which has come under our observation, where the continued vitality of territorial laws after the organization of a State are relied upon, there has been some special provision prolonging their application till altered or repealed. It would appear that if territorial legislation by virtue of its original enactment continued in force after the expiration of the territorial government, such precautionary provisions would be wholly unnecessary. The prevalence of the custom to adopt those special provisions when it is desired to continue the applicability of territorial legislation goes far toward showing that there is no established recognition of the doctrine contended for by plaintiff in error's counsel. But if it be conceded that the affirmative enactments promulgated by Congress, or by the local Legislature of a territory, should be continued in force upon the principle contended for, we do not think the rule would go so far as to include a mere rule of construction adopted by the courts of the territory which is not of such long standing and importance as to become a rule of property. It was to legislative enactments that the authority cited had reference, and not to rules formulated by the judicial construction of the courts. These are effective only so long as the courts see fit to follow them. The presumption based upon the policy of consistency which would authorize the inference that when the judiciary of a country had once adopted a rule of construction it will be adhered to and considered as prevailing till the contrary is shown, does not apply with equal force when there has been an entire change of the judicial system. When a territory is organized into a State, in our opinion, not only do the laws of the territorial government cease to have any force unless specially continued, but the territorial courts are extinguished and succeeded by an entirely new system. The territorial courts which existed in both the Indian Territory and Oklahoma before the organization into a State were creatures of congressional legislation, formed no part of the judicial system provided for in the Constitution of the United States, and ceased to have any further existence upon the admission of the State into the Union. McNulty v. Batty, 10 Howard, 81, 13 L. ed., 336; Benner v. Porter, 9 Howard, 235, 13 L. ed., 119; Moore v. United States, 85 Fed., 465; 26 Am. & Eng. Ency., 2d ed., 467; 11 Cyc., 959, and cases there cited.

The presumptions relied upon by counsel for plaintiff in error would be difficult of application to the situation growing out of the organization of the new State of Oklahoma. We know judicially that prior to its admission into the Union this State consisted of the Territory of Oklahoma and what was known as the Indian Territory. We also know judicially that these territories were each governed in a large measure as to their domestic affairs by entirely different laws, emanating from different legislative sources. Each territory was under the dominion of separate and distinct judicial systems. From this condition there would inevitably arise conflicts, both in their legislative provisions and in the rules of decision adopted by the different courts of the two

countries. Which shall we now presume were continued in force after the organization of the State, and which shall prevail in cases of conflict? The very fact that this condition may arise in the attempted application of some of the old laws is, we think, a sufficient answer to the contention that any of them will be presumptively continued •in force after the organization of the two territories into one State. The law will not create a presumption which logically leads to irreconcilable confusion.

We do not think it can be contended with any show of reason that we should presume that the rule of construction adopted in the Territory of Oklahoma in 1894 by its territorial Supreme Court should, after the organization as a State, be extended over and made applicable to a portion of the country never a part of that territory. Haworth, the place where the negligence is shown to have occurred, was not within the limits of that territory, but was situated in that portion of the country known as the Indian Territory. We know from the laws of Congress that the Indian Territory was provided with a special judicial system in which the courts could entertain jurisdiction of actions of this class. The testimony fails to show that these courts had ever adopted any rule of construction upon the question here involved, nor is there any evidence as to what rule, if any, had been adopted by the United States Circuit Court of Appeals for the Eighth Circuit. It seems that the Supreme Court of the United States has never yet passed upon the question as to whether or not mental anguish is recoverable as an element of actual damages in this class of cases.

In conclusion we might add that if the burden of showing what is the law prevailing at the present time in any State of the Union is discharged by such evidence as that here relied upon to prove the law of the State of Oklahoma, the burden is much less onerous than we have heretofore conceived it to be. If the presumptions invoked by counsel for plaintiff in error are applicable to this case and entitled to the cogency claimed, they are equally applicable and entitled to equal force when applied to a case involving the status of the law of any other State of the Union which has heretofore passed through a territorial form of government. If that be true, then it follows that the burden would be discharged in every such instance by simply showing what had been the holdings of the territorial courts, or of the United States courts, while the territory of which the particular State is formed was dominated by the federal judiciary. Lapse of time would be immaterial, and we would thus have the strange spectacle of proving the present law in many of the older States by simply showing the judicial construction adopted by an extinct judicial system, or an antiquated ruling by federal courts made perhaps many years ago. To illustrate: In order to·prove the present status of the law in Florida, it would make a *prima facie* case by showing what the territorial courts held or the territorial Legislature enacted prior to 1845 when it was admitted as a State. To our minds the consequences which would logically flow from such a rule are sufficient to show its inapplicability and unworthiness to be recognized by the courts.

After a careful examination of the question involved, we have

reached the conclusion that the former disposition made in this case was correct, and the motion for rehearing is therefore overruled.

*Affirmed.*

Application for writ of error dismissed.