WESTERN UNION TELEGRAPH CO. v. KERSTEN.†

(Court of Civil Appeals of Texas. Galveston. Nov. 13, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY IN DELIVERY OF MESSAGES—LIABILITY—EVIDENCE.

In an action against a telegraph company for delay in the delivery of a message, announcing the death of the sendee's brother, and thereby depriving the sendee of the privilege of attending the funeral, evidence *held* not to sustain a finding that the sendee could and would have attended the funeral had the telegram been promptly delivered.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 65*)—DELIVERY OF MESSAGES—SPECIAL CONTRACTS—PLEADINGS.

A petition, in an action against a telegraph company for delaying the delivery of a message, which alleges that the company accepted the message for delivery to plaintiff with knowledge that his residence was unknown to the sender, and accepted the sender's guaranty that any special delivery charges which might be required if plaintiff resided beyond the free delivery limits at the point of destination would be paid, alleges a special contract, and notwithstanding the stipulation on the back of the message that the company does not undertake to make free delivery beyond the free delivery limits, but will without liability at the sender's request as his agent and at his expense endeavor to contract for him for such delivery at reasonable prices, the company failing to endeavor to deliver the message to plaintiff living a short distance beyond the free delivery limits is liable for breach of the special contract.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. § 65.*]

3. TELEGRAPHS AND TELEPHONES (§ 37*)—DELIVERY OF MESSAGES—SPECIAL CONTRACTS.

In the absence of a special contract, a telegraph company is not liable for failure to make a delivery of a message beyond the limits of the city of destination or beyond the free delivery limits thereof.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

4. TELEGRAPHS AND TELEPHONES (§ 74*)—DELAY IN DELIVERY OF MESSAGES—ACTIONS—INSTRUCTIONS.

An instruction, in an action against a telegraph company for delay in the delivery of a message, that it is the duty of a telegraph company to deliver all messages within its free delivery limits within a reasonable time after receiving the same and to deliver telegrams beyond free delivery limits when the required special delivery fees are paid, or when it accepts a message and agrees to deliver the same in consideration of special delivery fees being guaranteed, is objectionable as requiring a higher degree of care than the law imposes, for the company is only required to use ordinary care to make such delivery, while the instruction makes it the absolute duty of the company to deliver in a reasonable time.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

5. TRIAL (§ 251*)—INSTRUCTIONS—ISSUES.

An instruction which submits an issue not raised by the pleadings or evidence is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Appeal from District Court, Austin County; Frank S. Roberts, Judge.

Action by Herman Kersten, Jr., against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Hume & Hume, of Houston, for appellant. C. G. Krueger, of Bellville, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant to recover damages for the alleged negligent failure of appellant to make delivery of a telegram received by it for transmission and delivery to appellee informing him of the death of his brother. The damages claimed are for mental anguish caused by the inability of appellee to attend his brother's funeral, which it is alleged resulted from the negligence of appellant in failing to make delivery of the telegram. The telegram was as follows: "Cat Springs, Texas, Dec. 16, 1910. To Herman Kersten, Haskell, Texas. Brother Julius was killed today. Will be buried Sunday morning. Come. C. Theuman."

The following are the material allegations of the petition: "Plaintiff says that the defendant accepted said message for transmission and delivery to the plaintiff, and did also accept and collect the sum of 25 cents as fees or charges for sending, transmitting, and delivering said message to this plaintiff, and that by reason thereof the defendant became bound and obligated to send, transmit, and deliver said message to this plaintiff immediately, or at least within reasonable time after receiving it at its office in the town of Haskell, Tex. Plaintiff further represents unto the court that C. Theuman, the sender of the message, did not know how far from the office of the defendant this plaintiff lived or resided, nor did he know that this plaintiff resided without the free delivery limits established by the defendant for said town of Haskell, and therefore offered and guaranteed to pay any and all special delivery fees or charges, if any were needed or required, to promptly deliver the aforesaid message to this plaintiff, to which the defendant's agent replied: 'That is all right; if any are needed you can pay later, and I will notify you of it.' Plaintiff further represents unto the court that he and his said brother, Julius, were very much attached to each other by natural brotherly love, and that if the defendant had promptly delivered said message and telegram to him, as it was bound and obligated to do, by reason of the contract aforesaid, he would and could have received said message in time to have reached Cat Springs, Tex., the home of his said brother, in time to have attended his funeral, and that he

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

161 S.W.—24    †For opinion on motion for rehearing, see 161 S. W. 1091.

would and could have come to attend the funeral of his said brother, and viewed his body and remains, if the defendant had promptly delivered said message and telegram to him as it had bound and obligated itself to do. Plaintiff further represents unto the court that, at the time said message and telegram was sent by said C. Theuman, and at the time it was received by the defendant at its office in the town of Haskell, Tex., this plaintiff resided near said town of Haskell, Tex., and within about 1¾ of a mile from the defendant's said office in said town, and within about 100 yards of the city limits of said town of Haskell, Tex."

It is further alleged: "That the defendant company did not notify the sender of said message that any special delivery fees were required or needed to deliver said message promptly to this plaintiff, nor did it give to this plaintiff an opportunity to pay special delivery fees, if any were really required to promptly deliver said message or telegram to this plaintiff. Plaintiff further says that, if any special delivery fees were really needed or required to promptly deliver said message or telegram to this plaintiff, the failure on the part of defendant to promptly notify the sender or sendee of the fact that it required special delivery fees to promptly deliver said message or telegram to plaintiff was culpable negligence on the part of the defendant, for which it is answerable in damages to this plaintiff. The plaintiff says that the defendant either willfully or through carelessness or negligence as aforesaid failed and refused to deliver said message to this plaintiff promptly upon receiving it at Haskell, Tex., as it should and ought to have done, and that said carelessness and negligence as aforesaid was the direct and proximate cause of his great mental pain, dire distress, and many disagreeable emotions of the mind which the plaintiff has suffered, and the wounding and lacerating of his feelings as aforesaid."

The defendant's answer contains a general demurrer, a special exception, a general denial, and two special pleas. The first of these pleas is, in substance, that the message was written upon a blank form furnished by the defendant upon which the following stipulation was printed: "Messages will be delivered free within one-half mile of the company's office in towns of 5,000 population or less, and within one mile of such office in other cities or towns. Beyond these limits the company does not undertake to make delivery, but will, without liability, at the sender's request, as his agent and at his expense, endeavor to contract for him for such delivery at a reasonable price."·

In the second plea it is averred, in substance: That at the time the message was sent the defendant had established office hours in the town of Haskell; said hours being from 8 a. m. to 8 p. m. daily. That the message was received at Haskell at 5:55 p. m. on December 16, 1910, and the agent at Haskell promptly sought to find plaintiff and deliver said message, but was unable to locate him, as he was not to be found within defendant's free delivery limits, nor within the town of Haskell, and that about 7 p. m. on said ˙date defendant's agent at Haskell, having received information that plaintiff resided out in the country from the town of Haskell, sent a service message to defendant's agent at Cat Springs, Tex., notifying said agent that plaintiff resided in the country· from Haskell and advising him that a special messenger would be required to deliver said message, and that payment of the fee for such messenger must be provided. That said service message was promptly transmitted, but that no reply was received thereto on December 16, 1910, by reason of the fact that, though the message was promptly transmitted and due diligence was used to obtain a reply, such reply could not be obtained before the office at Haskell closed under the office hours rule before mentioned.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $1,200.

[1] The evidence shows that the brother of the plaintiff was killed on December 16, 1910. At the time of his death he lived in the country about eight miles from the town of Cat Springs in Austin county. The message before set out was delivered to appellant's agent at Cat Springs for transmission to appellee about 4 p. m. on December 16, 1910. At the time the message was delivered for transmission, the sender, Theuman, paid the charges for transmission to Haskell and informed appellant's agent that he did not know how far from appellant's office at Haskell appellee resided, and offered to pay or guarantee any charges there might be for delivery beyond the free delivery limits of appellant's Haskell office. On this point he testified as follows: "I offered to pay any and all special delivery fees and offered to deposit the money with the agent there. He would not accept it, and he says: 'Go on, and if there are any fees, that will be all right; you can come around here to-morrow or some other time and pay it; it will be all right.' They never did notify me that there were any special delivery fees for the delivery of this telegram." The message was promptly transmitted to Haskell and reached appellant's office there in a short time. When it was transmitted, the agent at Cat Springs failed to notify the Haskell agent that special delivery charges were guaranteed. The agent at Haskell, after ascertaining that appellee lived outside of the town limits of Haskell and about two miles from appellant's office at that place, telegraphed the Cat Springs office that the payment of special delivery charges was required. This telegram did not reach Cat Springs until after the office was closed on the evening of the 16th, and consequently was not received

there. Not having any notice that the delivery charges were guaranteed, the Haskell agent made no further effort to have the message delivered until the next day, when he mailed appellee a notice that there was a message at the telegraph office for him. Appellee first learned on Sunday, December 18th, of his brother's death. He took the first train out of Haskell, which left there at 7 o'clock p. m. on the 18th, and he reached Cat Springs about 7 p. m. the next day. His brother was buried before appellee reached Cat Springs. Appellee was at home on the evening and night of the 16th. Three trains left Haskell each day, one at 7 a. m., one at 7 p. m., and one at 10 p. m. The train that left Haskell at 7 p. m. on the 18th made connections which enabled appellee to reach Cat Springs in 24 hours. It is not shown what connections were made by the other two trains, nor how long it would have taken to make the trip if appellee had taken either of these trains. The evidence fails to show when or where appellee's brother was buried.

The first assignment of error complains of the verdict on the ground that it is not supported by the evidence, in that there is no evidence that appellee could and would have taken the train from Haskell in time to have reached Cat Springs before his brother's burial, and no evidence that he could have been present at his brother's funeral at the time and place it occurred had the telegram been promptly delivered.

We think this assignment must be sustained. The fact that appellee made the trip in 24 hours by taking the 7 p. m. train on the 18th is sufficient to justify the conclusion that he could have made the trip in the same length of time if he had taken the 7 p. m. train on the 16th or 17th, and if he had done so he would have reached Cat Springs on the evening of the 17th or 18th; but we think it would be only a surmise or conjecture to conclude from this evidence that he could have made the trip in 24 hours if he had taken either of the other trains. But granting that the evidence is sufficient to show that he could have reached Cat Springs within 24 hours by taking any one of the daily trains out of Haskell, and that he might have gotten to Cat Springs as early as 7 p. m. of the 17th, still, in the absence of any evidence as to when and where the brother was buried, we cannot say that he could have reached his brother before his burial. We do not think we are justified in concluding that the deceased was buried on Sunday, the 18th, from the fact that the telegram sent on the 16th informed appellee that the burial would occur on the 18th. The mere fact that it was intended on the 16th that the burial would take place on the 18th does not show that the burial did occur on the last-named date. The time and place of the burial were matters susceptible of positive and exact proof and were facts necessary to be established in order to show that appellee could have been present at the funeral had the telegram been promptly delivered. As we view the evidence, it is clearly insufficient to establish the time and place of the burial, and at most raises only a surmise or conjecture that the burial occurred on the 18th of December, and there is not even an intimation as to where it occurred. Courts are not authorized to act upon evidence of this kind, especially when it is apparent that the facts sought to be so proven can be established by direct and positive evidence.

[2] We do not agree with appellant in the contention, made under its second assignment of error, that the pleading and evidence in this case fail to show a contract on appellant's part to deliver the telegram to appellee at his home outside of the limits of the town of Haskell. The petition before set out alleges, in substance, that the appellant accepted the message for delivery to appellee with the knowledge that his exact place of residence was unknown to the sender of the message, and accepted the sender's guaranty that any special delivery charges which might be required in event appellee resided beyond the free delivery limits at Haskell would be paid. This is an allegation of a special contract, and, giving full effect to the stipulations printed on the back of the message that "beyond the free delivery limits (at Haskell) the company does not undertake to make free delivery, but will, without liability, at the sender's request, as his agent and at his expense, endeavor to contract for him for such delivery at a reasonable price," appellant became bound and obligated upon the receipt of the message at Haskell "to endeavor to contract for its delivery at a reasonable price." The evidence fully sustains the allegations of the petition in regard to the special contract for delivery and fails to show that appellant made any endeavor to contract for the delivery of the telegram. The fact that appellee lived a short distance beyond the limits of the town of Haskell does not affect appellant's liability under the contract. The cases of Klopf v. Tel. Co., 100 Tex. 540, 101 S. W. 1072, 10 L. R. A. (N. S.) 498, 123 Am. St. Rep. 831; Tel. Co. v. Byrd, 34 Tex. Civ. App. 594, 79 S. W. 40; Tel. Co. v. Swearingen, 95 Tex. 420, 67 S. W. 767; Tel. Co. v. White, 149 S. W. 791; Tel. Co. v. Shockley, 57 Tex. Civ. App. 30, 122 S. W. 945; and Tel. Co. v. Carter, 156 S. W. 332—cited by appellant, do not sustain its contention. No special contract for delivery was alleged or proven in any of these cases except the Carter Case, and the only special contract in that case was an agreement on the part of the sender of the message to pay the charges of a connecting carrier which the court held was not sufficient to make the telegraph company liable for the negligence of the connecting carrier, a telephone company, in failing to deliver the message.

[3] Of course, in the absence of a special contract, the company would not be liable for failure to make delivery beyond the limits of the town or city to which the message was sent, nor beyond the free delivery limits in such town or city, and this is the extent of the holding in the cases cited.

This conclusion disposes of the questions presented by the third, fourth, fifth, and sixth assignments of error, and each of them is overruled.

[4] The seventh assignment complains of the following paragraph of the court's charge: "You are charged that it is the duty of a telegraph company to deliver all messages within its free delivery limits within a reasonable time after it receives same, and also to deliver telegrams beyond its free delivery limits when the required special delivery fees are paid, or when it has accepted a message and agreed to transmit and deliver same in consideration of special delivery fees being guaranteed to be paid."

This charge is objectionable on the ground that it requires a higher degree of care on the part of appellant than the law imposes. Appellant was not under the absolute duty to deliver the telegram in a reasonable time, but was only required to use ordinary care to make such delivery. Telegraph Co. v. Grocery Co., 126 S. W. 1172.

[5] The paragraph of the charge complained of by the eighth assignment is also erroneous, in that it submits an issue not raised by the pleadings or the evidence. There is no evidence that appellant's agent at the time he accepted the message for transmission was informed that appellee lived outside the limits of the town of Haskell, nor is there any allegation of this kind in the petition, and issue of whether the agent was so informed should not have been submitted to the jury.

What we have said disposes of all the material questions presented in appellant's brief. For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.