### Western Union Telegraph Company v. H. A. Waller.

#### No. 1220. Decided June 4, 1903.

**1.—Telegraph—Injury to Feelings—Evidence.**

In an action for damages from delay in delivery of a telegram, whereby plaintiff was prevented from being present at his mother's deathbed, it was not permissible to show inquiries and requests by the mother for her son's presence, as enhancing the mental suffering of the son. (Pp. 592, 593.)

**2.—Damages—Injury to Feelings—Local Law.**

Damages for injury to the feelings arising from negligent delay in delivering a telegram may be recovered in this State, though the plaintiff resided in the Indian Territory and the message was addressed to him there, where such damages were recoverable. (P. 593.)

Error to the Court of Civil Appeals for the Second District, on error from Wichita County.

Walker sued the telegraph company and had judgment, which was affirmed on defendant's appeal. The company then secured writ of error.

*Geo. H. Fearons, C. F. Huff,* and *Mathis & Barwise,* for plaintiff in error.—In an action by a son against a telegraph company to recover damages for mental suffering caused by negligent delay in the company failing to promptly and quickly transmit a message to the son advising him of the condition of his mother, the court, over the objection of defendant, should not allow a witness who was a bystander to testify before the jury that the mother kept calling for her son, thus rehearsing before the jury the harrowing deathbed scenes, for the reason that the testimony is hearsay and is only calculated to prejudice the minds of the jury and to inflame them against the defendant and to increase the amount of damages. Telegraph Co. v. Stiles, 89 Texas, 315, 34 S. W. Rep., 438; Telegraph Co. v. Carter, 85 Texas, 586.

The Court of Civil Appeals erred in holding that the telegram involved in this controversy affected the telegraph company with notice of these facts, to wit: a. That on account of the plaintiff being his

mother's youngest son she seemed to dote on him.  b.  That plaintiff's mother, prior to her death, would continuously keep calling for him, "Harvey, why don't you come to me?"  c. That prior to her death plaintiff's said mother would continuously keep inquiring for him; and, d. That these several things would subsequently be communicated to the plaintiff and his mental agony and damages thereby be enhanced.

Where the contract is made in the State of Texas and is to be performed in the Indian Territory, it will be presumed that it was entered into with reference to the laws of the Indian Territory, and those laws will be resorted to in ascertaining the validity, obligation and effect of the contract.  If, by the nature and terms of the contract, it appears it was to be performed in another jurisdiction, then the place of making the contract becomes immaterial, and the laws of the place where the contract is to be performed govern in determining the rights of the parties.

Where a message is delivered to a telegraph company in the State of Texas to be transmitted to a point in the Indian Territory, and through negligence of the company's agent, which negligence all occurred in the Indian Territory, the message was delayed, the rights of the parties are governed by the law of the Indian Territory, the negligence, if any, having occurred wholly in the Indian Territory; and since under the laws of the Indian Territory such negligence did not constitute a cause of action, there was likewise no right of recovery in Texas.  Acts which do not constitute a tort where committed do not constituted a tort in any other jurisdiction.  Telegraph Co. v. Blake, 68 S. W. Rep., 526; Beach Modern Law of Contracts, sec. 592; Telegraph Co. v. Eubank, 38 S. W. Rep., 1068; Lewis v. Headley, 36 Ill., 433; Andrews v. Pond, 13 Peters U. S., 65; Waverly Nat. Bank v. Hall, 150 Pa. St., 466; Story on Conflict of Laws, sec. 280; Campbell v. Nichols, 33 N. L. Law, 81; Western U. Tel. Co. v. Thomas, 61 S. W. Rep., 501, 25 Texas Civ. App., 398; Howard v. Fletcher, 59 N. H., 151; Gray v. Jackson, 51 N. H., 9; Bell v. Bruen, 1 How. (U. S.), 169; Cox v. United States, 6 Peters (U. S.), 172; Packing Co. v. Telegraph Co., 70 Ill. App., 275; 3 Am. and Eng. Enc. of Law, 561, and authorities cited in note.

*Montgomery & Hughes,* for defendant in error.—As clearly shown in the opinion of the Court of Civil Appeals, the telegraph company must take notice of the relationship of the parties whether expressed on the face of the telegram or not and whether they have actual notice thereof or not.  See cases cited in the opinion.  As they must take notice of the relationship, they must also take notice and they are conclusively presumed to know anything usually and naturally incident to this relationship, and must anticipate those things which would or might ordinarily occur under the circumstances.  This being true, this court must say that it was probable, under the facts of this case, that the mother should have and should express an intense desire to see her son.  That she should frequently call for him and inquire as to his arrival, and that

she should even put her anxiety into words exclamatory in their nature, which words as shown in this record are no more than the expression of an intense desire to see her son and communicate with him before death. We earnestly insist that there is nothing unusual or extraordinary in the facts of this case. Every act and word of this dying mother was what an ordinary person would have expected as likely to occur under the circumstances. Her every word and act was but the expression of an intense desire to see her son. The so-called exclamation is but the expression in an interrogatory form of her solicitude to see her son.

The foregoing conclusion being established, there seems to us to be no question but that the telegraph company must have anticipated that the facts surrounding the mother's death would be communicated to the son and that his grief and disappointment should be greatly enhanced by reason of not having been able to receive the last communications which she so earnestly desired to make. In fact it seems to us that this sense of disappointment and grief is the very essence of the case. A man would be strangely constituted that would not grieve much over the fact that he was prevented from witnessing the death struggle of one he loved, and so the principal sorrow in this and similar cases must be because of the failure to be present and receive the last message and try to comfort the dying.

We insist that the jury can not properly estimate the damage without knowing something of the facts. In this case there was no objection to the evidence to the effect that the foregoing facts were communicated to plaintiff. We have already shown what the objections to this testimony was. The general objections, that it was incompetent, irrelevant and immaterial, need hardly be noticed. We take it that the court is inclined to think that this evidence was not material and that it was calculated to influence the minds of the jury and prejudice them against defendant.

We have already shown that the things proven ought to have been contemplated by defendant and that the plaintiff's grief was thereby enhanced. It may, however, be contended that the rehearsal of the grief of the mother was calculated to arouse the sympathy of the jury. If so, that fact would not under the testimony be inadmissible. There are numerous cases in Texas where the courts have permitted the sufferings of others to go before the jury for the purpose of proving the mental anguish of plaintiffs in cases analogous to this. The case of Telegraph Company v. Richardson, 79 Texas, 649, is a fair example of such cases. In that case plaintiff telegraphed for a physician for his sick child, but by reason of the negligence of the company the physician did not receive the message and the plaintiff was compelled to witness the continued suffering and death of his child. The Supreme Court sustained a verdict for plaintiff. Plaintiff's mental suffering in that case was due to the fact that he was compelled to witness the sufferings of his child which might have been alleviated. What was more calculated to arouse the sympathy of a jury, and yet it was, as in this case, of the very es-

sence of the case and therefore admissible. We cite the following similar cases: Telegraph Co. v. Stephens, 21 S. W. Rep., 148, 2 Texas Civ. App., 129; Telegraph Co. v. Kendzora, 26 S. W. Rep., 245; Telegraph Co. v. Griffin, 57 S. W. Rep., 327, 27 Texas Civ. App., 306.

WILLIAMS, Associate Justice.—Defendant in error recovered in the District Court the judgment which was affirmed by the Court of Civil Appeals against plaintiff in error for damages for negligent delay in delivering a telegraphic message sent from Jacksboro, Texas, to Duncan, I. T., summoning defendant in error to the bedside of his mother who was dangerously ill at the former place. The mother died and plaintiff claimed that, in consequence of delay in delivery of the message, he was unable to reach her before her death and suffered the mental anguish for which he recovered. Evidence was admitted in behalf of plaintiff in the court below, that, before her death, his mother "made inquiries and requests with reference to her son often and frequently, and kept calling, 'Harvey, why don't you come to me?'" Objection was properly made by defendant that the evidence was "hearsay, incompetent for any purpose, and was offered for the purpose of prejudicing the defendant's case before the jury, and was reasonably calculated to inflame the minds of the jury against defendant, and that such testimony was irrelevant."

We are of the opinion that the testimony was irrelevant and was calculated to excite unduly the sympathies of the jury, and to cause them to lose sight of the true inquiry, which was the effect produced upon plaintiff, himself, by defendant's negligence. The direct and immediate tendency of the evidence was to show a state of mind of the mother, existing under circumstances and with incidents strongly appealing to the feelings of those trying the case. The state of mind and those incidents were, themselves, not involevd in the issue being tried. They had, as we have said, a strong tendency to improperly influence the decision of the real issues; and they should not, therefore, have been allowed to come into the case, unless, circumstantially, they tended in an appreciable degree to establish some fact which was at issue. It is urged that the demeanor of the mother tended to show her feelings for the son and that this tended inferentially to prove the existence of a corresponding feeling on the part of the son for the mother, and the case of Western Union Telegraph Company v. Lydon, 82 Texas, 364, is relied on to sustain the contention. In that case evidence was admitted that plaintiff was "his mother's favorite son" over the objection that it indicated what the mother's feelings were, which was not the issue. After remarking that the objection was not made at the proper time Judge Henry adds: "But if it had been, we do not think it should have been excluded upon the objection made to it. While juries in the absence of any evidence on the subject may act upon their own knowledge of the affection subsisting between a mother and son, still the admission of evidence upon the subject may be proper, and we can not say that proof of a special regard felt

and shown by a mother for one of her children may not be properly considered by the jury, in connection with other circumstances, in estimating the feelings of the child for the parent." One difference between that case and this is that the evidence there offered was direct proof of the feelings of the parties toward each other, the form of the statement being such as naturally expressed the existence of a reciprocal feeling between mother and son; while here, inquiries and exclamations of a dying mother are offered, from which is to be first drawn an inference of her feelings for her son, and then, from that, another inference of the feelings of her son for her. For such a purpose the evidence was too remote; and in addition to the objection arising from the slight and remote character of the inference, a deathbed scene is reproduced of such peculiar pathos that its influence would be almost sure, under a ruling admitting it as proper subject for consideration, to usurp the attention of the jury to the exclusion of those considerations which alone should control their action. It is to be observed of the Lydon case, and other decisions of this court, that properly understood, they only admit evidence to prove the existence of those feelings which the jury might, from their knowledge of human nature, presume to have existed, in the absence of proof, and, perhaps, the extent to which they existed in the particular case (Western U. Telegraph Co. v. Adams, 75 Texas, 535); and the evidence in all of the cases was such as tended proximately to show the existence of the feeling, and was not, like that here relied on, mischievous in itself and relating only very remotely to the question under investigation. It is very probably true that a repetition to plaintiff of these expressions by his mother of her yearning for his presence would add poignancy to the anguish which his failure to see her before her death occasioned; but there would be no end to an inquiry into the effects of such an action and reaction of mind upon mind; and, accordingly, the decision of this court in Telegraph Company v. Stiles, 89 Texas, 312, wisely confined the recovery to damages for such injury to such feelings as ordinarily arise from the failure to deliver such a message, and excluded evidence of aggravation of the character of that here in question. The evidence, in our opinion, should have been excluded. The contention that, as damages for mental anguish are not recoverable in the Indian Territory, where the message was to be delivered, they can not be recovered in this State, was decided adversely to plaintiff in error in Telegraph Company v. Cooper, 69 S. W. Rep., 427, in which this court refused a writ of error.

*Reversed and remanded.*