CASE 93.—ACTION BY RICHARD QUIGLEY AGAINST THE CUMBERLAND TELEPHONE & TELEGRAPH CO. FOR MENTAL ANGUISH IN FAILING TO DELIVER A DEATH TELEGRAM.—October 16.

## Cumberland Telg. & Telp. Co. v. Quigley

Appeal from Barren Circuit Court.

S. E. Jones, Circuit Judge.

Judgment for plaintiff, defendant appeals — Affirmed.

1. Telegraphs and Telephones—Transmission of Money—Delay—Company's Liability.—That, through defendant telephone company's negligent delay in transmitting money to prepare plaintiff's daughter's remains for transportation, plaintiff suffered great mental anguish because of the delay in transporting the remains, lost time, and expended money shows a cause of action against the company.

2. Same.—A telephone company cannot escape liability for negligently delaying transmission of money, sent by plaintiff for necessary use in preparing his daughter's remains for trans-

portation, on the theory that it is uncertain that, if the money had been promptly delivered, the sender would have prepared the remains for shipment earlier than she did, or that the railroad company would have delivered them promptly, where the telephone company knew the use for which the money was sent.

3. Same—Damages—Elements.—A telephone company, having negligently delayed transmission of money, sent to its knowledge for use in preparing the sender's daughter's remains for transportation, resulting in delayed shipment of the remains, is liable to the sender for mental anguish and humiliation arising because he was unable to make prompt burial, and to see her remains before decomposition set in, and for loss of time and money expended.

4. Trial—Misconduct of Counsel.—In an action against a telephone company for negligent delay in transmitting money to prepare remains for transportation, the company was not prejudiced by plaintiff's counsel, statement to the jury that the sendee showed that the company had not notified her by trying to mortgage her only furniture to procure the necessary money, though there was no evidence of such attempt, where the jury were instructed to disregard counsel's remark if he went beyond the evidence.

5. Telegraphs and Telephones — Verdict not Excessive. — Two hundred dollars was not excessive recovery against a telephone company for negligently delaying transmission of money, sent, to the company's knowledge, for use in preparing plaintiff's daughter's remains for transportation, where transportation was delayed from Friday to Sunday, resulting in mental anguish and humiliation, and loss of time and money, to plaintiff.

BAIRD & RICHARDSON for appellant.

### POINTS AND AUTHORITIES.

1. "This court is committed to the doctrine that a telegraph company is answerable in damages for mental suffering caused by its failure to deliver social messages by reason of· which the sender or person addressed is prevented from attending (1) at the bed-side, (2) at the death or (3) funeral of a near relative." This court has not applied this doctrine further than these three classes. of cases. (Denham v. Western Union Tel. Co., 27 Ky. Law Rep.,. 1000.)

2. The fact that a distressed father, may conjure up a thousand.

forebodings of evil to the remains of his child, when it is in no danger, may furnish enough trouble for him, yet it gives no solid basis for damages in a practical business transaction. (Rowell v. Telegraph Co., 75 Tex., 26, 12 S. W., 534; Ricketts v. Western Union Tel. Co., 30 S. W. (Texas), 1105; Robinson v. Western Union Tel. Co., 24 Ky. Law Rep., 452.)

3. The cause of action of the sender of money by wire is the same, as the drawer of a check against a bank when his check is wrongfully dishonored. (American National Bank v. Morey, 24 Ky. Law Rep., 658.)

4. If the telegram in the case at bar had been delivered a "new agency" would have had to act before the corpse could be shipped, and where a new agency must act if the telegram had been delivered, damages cannot be recovered for things dependent upon the actions of such new agency. (Western Union Tel. Co. v. Parsons, 24 Ky. Law Rep., 2008; Taliaferro v. Western Union Tel. Co., 21 Ky. Law Rep., 1290.)

5. The court should have instructed the jury on the law of contributory negligence, and ordinary care. (Western Union Tel. Co. v. Matthews, 24 Ky. Law Rep., 3.)

6. The court defined "negligence and ordinary care" in its instructions; but, except in the instructions defining these terms, the same were not used in the instructions given to the jury.

7. The mental anxiety produced by the imagination cannot be made the basis of a recovery for increased anxiety and annoyance. (Western Union Tel. Co. v. Reid, 27 Ky. Law Rep., 659; McAllen v. Western Union Tel. Co., 70 Tex., 243; Western Union Tel. Co., Giffin, 93 Tex., 530; Rowell v. Western Union Tel. Co., 12 S. W., 534.)

8. Notice of the purpose for sending the money, was not notice that plaintiff would imagine evil to his child, or that the corpse would decompose.

## POINTS DISCUSSED AND AUTHORITIES CITED.

1. Appellant's request to avoid liability for delay in shipment of corpse because of an intervening or new agency. (W. U. Tel. Co. v. Caldwell, 31 Ky. Law Rep., 497; Postal Tel. & Cable Co. v. Terrell, 30 Ky. Law Rep., 1023.)

2. Appellant's contention that no recovery can be had for mental anguish endured on account of a failure to pay over money. (Hull v. L. & N. R. R. Co., 24 Ky. Law Rep., 375; W. U. Tel. Co. v. Van Cleve, 22 Ky. Law Rep., 53; Postal Tel. & Cable Co. v. Terrell, 30 Ky. Law Rep., 1023; W. U. Tel. Co. v. Simpson, 11 S. W. 385 (Texas).

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Between 8 and 9 o'clock on the morning of Friday, July 12, 1907, Richard Quigley deposited with the agent of the appellant company, the Cumberland Telephone & Telegraph Company, at Glasgow, Ky., $25, to be transmitted and delivered to his daughter, Eddie Curd, in Louisville, Ky., for the purpose of having the body of the infant child of appellee, who had died at the home of Eddie Curd, her sister, in Louisville, Ky., prepared for burial, and shipped to their home in Barren county. All of the necessary charges were paid by the appellee, including the messenger fee for notifying Eddie Curd that the money had been telegraphed, and for her to call at the office of the appellant company in Louisville and get it. The money was not delivered to Eddie Curd until about noon on Saturday, and because of its delay in transmission, appellee alleged that he was caused to lose time and expend money, and suffer great mental pain and anguish and humiliation, and he sued to recover of appellant damages therefor. This litigation resulted in a verdict in favor of appellee for $200, and from the judgment predicated on that verdict this appeal is prosecuted.

The facts, as alleged in the pleadings, and as gathered from the proof, are as follows: Appellee's daughter, a girl some 11 or 12 years old, while on a visit with her mother to her married sister, Eddie Curd, who lived in the city of Louisville, was taken sick and died. This was on Thursday, July 11th, about noon. Mrs. Curd telegraphed her father, who lived some four miles from Glasgow, notifying him of the death of his daughter, and also sent a special

delivery letter to a friend living in Glasgow, with the instruction that he communicate with her father and apprise him of the fact that his daughter was dead. In both the telegram and the letter she notified her father to forward to her the money necessary to prepare the corpse for burial and shipment, as she was without funds herself. The telegram was received early Friday morning. Appellee at once went to Glasgow where, upon his arrival, he also received the special delivery letter. With the letter and the telegram he called upon the agent of appellant company in charge of its office in Glasgow, and notified him of the contents of the letter and of his purpose and desire to send the money at once to his daughter. Upon being assured that the money could and would be promptly forwarded, and that it would not take over 30 or 40 minutes to complete the transaction, he paid to the agent the $25, together with all the necessary charges for telegraphing and transmitting the money, together with the messenger fee to notify his daughter that the money had been sent. This was about 9 o'clock in the morning. Appellee returned to his home, and relying upon the assurances of the agent of appellant company that the money would be promptly transmitted to his daughter, he at once made arrangements for the necessary vehicle to meet the corpse at the 6 o'clock train in Glasgow, upon which train his daughter would have had ample time to ship the corpse had the money been promptly delivered, as he expected it to be. The corpse was not upon the train, and appellee, being at a loss to know what was the matter, or what he should do, called upon the agent of the company with whom he had the conversation that morning, and learned that the money had not yet been delivered to his daughter,

but was assured that it would be delivered early Saturday morning, in time for the shipment of the corpse of his child on the morning train, which would stop at Cave City, some three or four miles away from appellee's home. Accordingly appellee went home, and again made preparations for meeting the corpse at Cave City. When the train arrived he was again disappointed, as the corpse was not on it. He then called up his daughter in Louisville, over the appellant company's line, and learned that the money had just then—about 11:30 a. m.—been paid to her. She did not have time, after receiving this money on Saturday at 11:30 a. m., to have the body prepared for shipment, secure the necessary permit, etc., to have it shipped on the 3 o'clock train, and hence was compelled to wait until Sunday morning, when the body was shipped to Cave City, arriving there at 11 o'clock Sunday, and was buried about 4 o'clock on the evening of the same day. At this time the body was badly discolored, and in an advanced state of decomposition.

Counsel for appellant offer quite a number of reasons why the judgment should be reversed. Their first complaint is that the petition was fatally defective, and that the demurrer should have been sustained thereto. In substance, it alleges that, by reason of the negligent act of appellant in failing to transmit the money, the plaintiff was caused to suffer great mental pain and anguish, by reason of the delay in the shipment of the corpse, loss of time, and expenditure of money. We are of opinion that these allegations constituted a cause of action, and, if true, appellant should be held answerable therefor.

Appellant's next complaint is that it was not liable, because of the intervention of a new agency, in

the presence of Eddie Curd and the railroad company, and that it is uncertain, even though the money had been promptly delivered by appellant, whether or not Eddie Curd would have promptly, or sooner than she did, prepared the corpse for shipment, or that the railroad company, after receiving same, would have promptly shipped and delivered it to its destination in Barren county, and therefore, under the rule announced in the cases of Taliferro v. Western Union Telegraph Company, 54 S. W. 825, 21 Ky. Law Rep. 1290, Chapman v. Western Union Telegraph Company, 90 Ky. 265, 13 S. W. 880, 12 Ky. Law Rep. 265, and Smith v. Western Union Tele graph Company, 84 Ky. 664, 8 Ky. Law Rep. 672, 2 S. W. 483, there can be no recovery. In the Taliferro Case no recovery was allowed "because," said the court, "his telegram was only an inquiry. It may be that if his telegram had been received in the confusion of the household, an answer might not have been sent, or if sent, by some miscarriage, without fault of appellee, it might never have reached appellant. Legal damages are such as directly and naturally result from the wrongful act complained of." In the Chapman Case Chapman sued for loss occasioned by not being able to attend his father before death, alleging that, had the telegram been delivered, he would have visited his father, and his father would have made him a present of a note which he held against him. The recovery in this case was denied, because the claim on which the damage was founded was entirely too remote, it being uncertain whether his father would have given him the note or not, and that there was nothing in the telegram to put the company upon notice of the purpose for which Chapman wanted to see his father before death. In the

case of Smith v. Western Union Telegraph Company appellant sought to recover damages because of the failure to deliver to him a message notifying him of the condition of the stock market, alleging that, had he received the message, he would have tele-graphed certain instructions to his broker, and thereby saved himself several thousand dollars. Here again the damages were held to be too remote and speculative, and that the failure to deliver the telegram in the ordinary course of events could not be charged to have been the cause of pecuniary loss. It will be observed that in none of these cases was the company notified of the particular importance attached to the telegram, which was later made the basis of the claim for damages. But not so in the case at bar. The company knew that appellee's daughter had written to him that she was unable to ship the corpse because of the lack of funds, that it would take $25, and that it was to meet this very emergency that the money was sent. It is common knowledge that in warm weather a corpse cannot be kept long before decomposition becomes advanced. Hence appellant's agent and servants must have known that any delay on their part in the transmission of this money and the carrying out of their contract with appellee would delay the interment of his daughter, and it is but natural and human that he would suffer mental worry and anguish by having the burial of his child delayed until its body was in an advanced state of decomposition.

Appellee desired to give his daughter a decent and timely burial. With this end in view he sought the services of appellant, and appellant contracted with him to send the money necessary to enable him to have his daughter properly prepared for burial and

promptly shipped. Had it carried out its contract, and delivered this money within a reasonable time, there is no question but what the body would have been promptly shipped, and the wish and desire of the father gratified. It failed, however, to carry out its contract, and scant excuse is offered in the record for its not having done so. An attempt is made to shift the responsibility for the delay in delivering the money to Eddie Curd, appellee's daughter, but the decided weight of the testimony and the circumstances surrounding the transaction are altogether in favor of the finding of the jury that the responsibility for this delay in the delivery of the money rested with appellant, hence, if by its negligence appellant added to the weight of sorrow then borne by appellee because of the loss of his child, it should be made answerable therefor; for, as said by this court in the case of Western Union Telegraph Company v Caldwell, 126 Ky.——, 102 S. W. 31 Ky. Law Rep. 497, appellant will not be permitted to escape responsibility for its acts upon the theory that what appellee's agent might have done was too remote to entitle him to compensation.

It is further insisted that, as the child was already dead, the mere delay in its shipment and interment affords no ground of complaint for appellee. To this we cannot agree. The delay in the delivery of the money and consequent shipment of the body denied to appellee the right to give his child a prompt burial; denied to him the right to look upon its features as they were in life, for, while it is true that before interment the casket was opened, it is equally true that at that time the body had become so discolored, and decomposition was so far advanced, that the father saw instead of the features of his child, a

badly discolored and decomposed corpse. If this condition was brought about by the negligence of appellant, and in consequence thereof appellee suffered mental anguish, humiliation, and pain, appellant company should likewise be held answerable therefor.

Appellant also complains that the court erred in instructing the jury that appellee might recover for loss of time and money expended, which were due to the negligence of appellant. The petition charged that there was a loss of time and expenditure of money in going to the trains for the purpose of meeting the corpse. If there was, and the delay in the shipment of the corpse was occasioned by the failure of appellant to carry out its contract promptly, then it should be held answerable therefor, and the court properly submitted this question to the jury.

Appellant also complains that the court erred in instructing the jury, but the record shows that the instructions were, of anything, more favorable to appellant than they were to appellee.

Appellant also charges that, because of misconduct on the part of counsel for appellee in addressing the jury, the case should be reversed. The language complained of is as follows: "I will tell you how you can know that the defendant did not notify Eddie Curd, and why you should believe her in preference to Clyde Harris. Eddie Curd went out and tried to mortgage her only furniture to get the money with which to buy a coffin and ship the corpse, and you know she would not have done this if she had been notified by the defendant." At the time these remarks were made counsel for appellant objected, and the court thereupon directed the jury that they must bear the evidence in mind, and if counsel went outside of the evidence in his speech, they must disregard it.

It was error for counsel to make a statement of fact which was not supported by the evidence in the case, and, upon his doing so, the trial court should have excluded it, and reprimanded him for having done so, and directed the jury to disregard the statement, but we are of opinion that the admonition of the court had this effect before an intelligent jury, and that appellant's case was not prejudiced thereby.

To the complaint that the verdict is excessive we may say that larger verdicts have repeatedly been upheld in cases not more meritorious and under circumstances less aggravating.

On the whole case it is apparent that appellant had a fair trial, and the judgment is therefore affirmed.