WESTERN UNION TELEGRAPH CO. v. CHILSON. (No. 345.)

(Court of Civil Appeals of Texas. El Paso. June 12, 1914. Rehearing Denied July 2, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 68*)—DAMAGES FOR MENTAL SUFFERING—NOTICE.

A telegram: "Moved mama to hospital tonight. Will operate to-morrow; very dangerous condition blood poisoning, wire money immediately, am very worried"—was on its face sufficient to affect the company with notice that a condition had arisen demanding the use of money and of plaintiff's necessity therefor, so as to make defendant liable to damages resulting from her mental anxiety and distress incident to delay in receiving funds in consequence of its delay in delivering the telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

2. TELEGRAPHS AND TELEPHONES (§ 68*)—DAMAGES FOR MENTAL SUFFERING—DEATH AND BURIAL.

Humiliation and mortification caused by plaintiff's financial embarrassment, with the body of her mother unprepared for burial, and without money for an appreciable length of time, was a proper element of damages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

3. TELEGRAPHS AND TELEPHONES (§ 66*)—SUFFICIENCY OF EVIDENCE—MENTAL SUFFERING.

Evidence, in an action for mental suffering caused by plaintiff's financial embarrassment while with the body of her mother unprepared for burial and without money for an appreciable length of time, although there was no direct evidence of mental suffering from the situation, held to sustain a verdict for plaintiff, as the

jury would have a right to infer its existence from their knowledge of human nature.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Genevieve Chilson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hume & Hume, of Houston, and Geo. H. Fearons, of New York City, for appellant. Barkley & Green and Woods & Harris, all of Houston, for appellee.

HIGGINS, J. Suit by appellee for damages resulting from negligent delay in delivery of telegrams.

It was averred: That on August 29, 1906, the plaintiff, aged 21, with her mother, Mrs. M. S. Waller, was visting in Denver, Colo.; that she was the stepdaughter of M. S. Waller, a part of his family, and dependent upon him for support; that upon said date her mother became suddenly and violently ill, and it became necessary to take her to a hospital and that an operation be performed. That plaintiff did not have the necessary funds; that thereupon she wired M. S. Waller upon said date as follows:

"Moved mama to hospital tonight. Will operate tomorrow; very dangerous condition blood poisoning, wire money immediately, am very worried."

This telegram was delivered to defendant at 11:55 p. m., August 29th. Not receiving a prompt reply, she again wired Waller on August 30, 1906, as follows:

"Doctor obliged to perform big operation to save mama's life. Very critical condition. Come at once. Genevieve."

"That at the time of writing and delivering said two telegrams to the defendant to be transmitted as aforesaid, plaintiff, by reason of her situation among strangers and without means and the condition of her mother, was suffering great mental pain, anguish, and anxiety, and desired to be relieved of the same by informing her stepfather of her situation, and that of her mother, and procure from him money to be used by plaintiff and her mother to meet their needs and necessities as they existed at that time and in the immediate future, and to procure his advice as to what course to pursue in their distressed situation, and to have her stepfather with her in the city of Denver, at the earliest possible moment."

That by proper diligence such messages should have been transmitted and delivered to Waller on August 30, 1906, but defendant negligently failed to do so; that her mother died at 8 a. m., August 31st at the hospital from the effects of her disease and operation; that after the death of her mother she was in great distress and anxiety because she had not heard from her stepfather in answer to said messages, and she thereupon on August 31, 1906, sent Waller the following message:

"Mother died this morning at eight o'clock. Come at once."

That Waller received this message about 8 p. m., on August 31st, and he at once by wire arranged with friends in Denver to call on plaintiff and furnish her with money and render all necessary assistance—

"and further acquainted her with the fact that he was on his way to Denver by the first train, leaving Marfa, and further counseled plaintiff how to act in regard to the funeral of her mother, and whom to apply to in Denver among his friends for assistance and aid. That by reason of the failure of the said defendant in sending to plaintiff a service message within a reasonable time, which would have been one hour from the time of the delivery of each of the telegrams to plaintiff's stepfather's business associates at El Paso, Tex., as promised and agreed by said defendant company, and as it was in duty bound to do, and by reason of the negligence of the defendant, and its servants and agents, to transmit and deliver said two telegrams to said M.. S. Waller, herein set out within a reasonable time, as aforesaid, at Marfa, Tex., from El Paso, Tex. (which would have been a period of one hour) and was prevented from having money to prepare for the funeral and burial of her mother, and was prevented from having the aid and counsel for 24 hours of her stepfather, M. S. Waller, and was prevented from having the counsel and aid of her stepfather's friends in the city of Denver. That is to say, had said M. S. Waller started on his journey from Marfa, Tex., to Denver, Colo., on the night of August 30th, instead of August 31st, as he would and could have done had he received said telegrams, hereinbefore set out, on August 30, 1906, he could have reached Denver 24 hours earlier. That in consequence of said defendant's negligence in failing to promptly deliver said two telegrams to her stepfather, M. S. Waller, plaintiff has suffered untold mortification, intense humiliation, and great mental pain and anguish, to her damage in the sum of $1,995, for all of which said sum of $1,995 she now prays judgment against the said defendant, the Western Union Telegraph Company, and further prays for such general and equitable relief as she may be entitled to under the law and facts of this case."

It is also shown by the allegations of the petition that the telegrams were addressed to Waller at El Paso, Tex., but at the time he was in Marfa, Tex., and a supplementary agreement to retransmit and deliver at Marfa is pleaded.

The jury was instructed:

"If you believe from the evidence that plaintiff was with the corpse of her mother on the 31st day of August, 1906, unprepared for burial and without money, for any appreciable length of time, and that because of such financial embarrassment, if any, she suffered humiliation and mortification * * * then, in such event, you will find your verdict for the plaintiff and assess her damages at such sum as you may believe from the evidence will reasonably and fairly compensate her for such mortification and humiliation, if any, suffered by her.

"In this connection you are charged that in estimating damages, if any, suffered by plaintiff, you will not take into consideration any mental anguish that you may believe she suffered by reason of her stepfather not being with her, nor will you consider any anxiety or apprehension that you may believe she suffered because of any forebodings as to the future financial condition of herself, or the future condition or disposition of the corpse of her mother, nor will you consider the question as to whether or not plaintiff was without funds or acquaintances in Denver at any time, but will

confine yourself in estimating damages, if any, exclusively to the matters above submitted."

Verdict in plaintiff's favor was returned in sum of $650. The petition is not subject to a general demurrer.

[1] The first telegram upon its face is sufficient to effect defendant with notice of the fact that a condition had arisen demanding the use of money and of plaintiff's necessitous condition in that respect. This being true, the petition in any event states a cause of action for recovery of damages resulting from mental anxiety and distress incident to delay in receiving funds. Goodwin v. W. U. Tel. Co. (Civ. App.) 160 S. W. 107; W. U. Tel. Co. v. McFarlane (Civ. App.) 161 S. W. 57, Tel. Co. v. Richards (Civ. App.) 158 S. W. 1187; Tel. Co. v. Simpson, 73 Tex. 430; Tel. Co. v. Pearson (Civ. App.) 137 S. W. 736; Tel. Co. v. Quigley, 129 Ky. 788, 112 S. W. 897,·19 L. R. A. (N. S.) 575.

[2] It will be noted the only item of recoverable damage submitted in the charge was founded upon humiliation and mortification caused by plaintiff's financial embarrassment while with the corpse of her mother on August 31, 1906, unprepared for burial and without money for an appreciable length of time. Under the authorities quoted this is a proper element of damage.

[3] The evidence in this case discloses that Mrs. Waller died at the hospital in Denver at 8 a. m., on August 31st. The telegram at that date notifying Waller of her death was received by him between 11 a. m. and 12 m. of same date. He immediately communicated with friends in Colorado, requesting them to call upon his daughter and furnish her with money and relieve her necessities, and at once started for Denver. The telegrams of the 29th and 30th were not delivered until September 1st. Had they been delivered on the 30th of August as they should have been, he would have reached Denver 24 hours earlier, and wired his friends there to have rendered his daughter assistance that much earlier. Before Waller reached Denver, Judge Brown, one of his friends, to whom he had wired, had made all proper arrangements with respect to embalming and care of body. The body, it seems, remained at the hospital until the night of the 31st, when it seems Brown made the necessary arrangements and it was embalmed and removed to an undertaking establishment. Plaintiff remained at the hospital until removal of body to undertaking parlors and thereafter with old school friends in the city. She also had and was holding the rooms occupied by herself and mother at one of the leading hotels of the city. Plaintiff testified she was entirely without funds at time of her mother's sickness and death, and had no friends or acquaintances in Denver upon whom she could call for assistance. About 12 hours after her mother died she received a wire from Waller advising he was on his way to Denver, and he arrived 48 hours later. She further testified that between the time her mother died and hearing from Waller her mind was distracted and she was in a condition of collapse. There are a number of assignments in different manner questioning the sufficiency of the evidence to support the verdict and judgment upon the ground that there is no evidence of any mental anxiety or distress occasioned by the fact that for a time after the death of her mother plaintiff was with the corpse unprepared for burial and without funds. There is a total want of direct evidence of mental distress due to the situation indicated. Direct proof of mental anguish ordinarily is not required. The jury may infer its existence from their knowledge of human nature. Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Tel. Co. v. Waller, 96 Tex. 589, 74 S. W. 751, 97 Am. St. Rep. 936; Tel. Co. v. McLeod, 22 S. W. 991; Tel. Co. v. Porter (Civ. App.) 26 S. W. 866.

However, the circumstances under which the cases hold it may be inferred are very different from an inference of mental suffering arising from mere delay in receiving financial assistance. In the latter case, we think ordinarily there should be some direct evidence of mental distress, and an inference thereof would not properly arise. In the Richards and Quigley Cases, supra, the point was not raised, and in the Goodwin and McFarlane Cases, supra, it seems there was direct evidence of humiliation and mental distress. While in the instant case this is lacking, yet we are of the opinion it was nonessential, and that the jury, from its knowledge of human nature, was warranted in presuming and finding such a mental condition to have existed in the case of a young woman alone with the corpse of her mother in a distant city among strangers, without funds, and awaiting a reply to a telegram previously sent, requesting the remittance of money. To the poignant grief incident to her mother's death, it may reasonably and naturally be inferred there was added a distraction of mind due to her financial embarrassment, when funds were imperatively and instantly needed for the proper care of the corpse and herself. The assignments presenting this phase of the case are therefore overruled.

Affirmed.