WESTERN UNION TELEGRAPH CO. v. FINFROCK. (No. 7261.)

(Court of Civil Appeals of Texas. Galveston. Dec. 19, 1916. Rehearing Denied Jan. 4, 1917.)

1. TELEGRAPHS AND TELEPHONES ☞66(4)—TRANSMISSION OF MONEY—DELAY IN DELIVERY—SUFFICIENCY OF EVIDENCE.

Evidence, showing failure of a telegraph company to make timely delivery of money telegraphed by parents to son, who was unable to obtain medical aid on account of lack of funds and was forced to rely on charity, was sufficient to sustain finding that the son suffered physical pain and mental anguish as a result of the company's negligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. ☞ 66(4).]

2. TELEGRAPHS AND TELEPHONES ☞68(1)—DELAY—MENTAL SUFFERING.

Mere disappointment or embarrassment is not such mental pain or anguish as to permit a recovery of damages for delay in delivery of telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 69; Dec. Dig. ☞ 68(1).]

3. TELEGRAPHS AND TELEPHONES ☞67(2)—TRANSMISSION OF MONEY—KNOWLEDGE OF CONSEQUENCE.

Where a telegraph company had knowledge of appellee's need for money telegraphed to him and the probable consequences of delay, it is liable for injury caused by its negligent delay.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 65; Dec. Dig. ☞67(2).]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by G. M. Finfrock against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hume & Hume, of Houston, for appellant. Atkinson, Graham & Atkinson, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for physical and mental pain and suffering alleged to have been caused him by the failure of defendant to comply with a contract made by it by which it agreed and promised to deliver to appellee at Maryville, Tenn., $32, which was deposited with defendant at Houston, Tex., for delivery to appellee as above stated. Plaintiff's petition alleges, in substance:

"That on or about February 1, 1915, he was at school in Maryville, Tenn.; that on or about said date he received an injury from which blood poison resulted, causing him mental and physical pain and anguish; that at said time and place he was without funds with which to furnish himself with board and lodging, and necessary and proper medical treatment; that about said time he communicated his said trouble to his parents at Houston, Tex.; that thereafter, on the morning of February 6, 1915, plaintiff's sister and mother entered into a contract with defendant's agent for the transmission and delivery of $32 to plaintiff by noon of February 6, 1915; that defendant was notified at said time of the facts as to plaintiff's condition, and obligated himself to deliver said sum to plaintiff at Maryville by noon of February 5, 1915; that defendant failed to perform its said contract and failed to deliver said money to plaintiff until February 13, 1915; that as a direct and proximate result of the breach of said contract plaintiff was without funds for a period of seven days; that he was compelled to subsist on charity of friends; that he was without proper and adequate medical treatment and drugs; that he suffered great mental and physical pain and anguish by reason of being unable to provide himself with necessary and proper treatment and drugs, and that as a result thereof his condition by reason of said blood poison was aggravated and extended, and he was caused to suffer shame, humiliation, physical pain, and mental anguish which he would not have suffered had defendant performed its contract."

The amount of damages claimed was $1,-999.16. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $100.

[1] The only question raised by appellant's brief is whether the evidence is sufficient to sustain the finding that plaintiff suffered any damage which was a proximate result of the failure of defendant to comply with its contract. The evidence shows that appellee, who was at school in Maryville, Tenn., became sick in the latter part of January, 1915, and wrote his father, who resides at Houston, Tex., telling him of his condition. On February 5th he telegraphed his father as follows: "What shall I do? Expenses paid until Tuesday; need them." In response to this telegram appellee's mother and sister went to the office of appellant at Houston and inquired if appellant had an office at Maryville and would undertake to deliver money at that place to appellee. Receiving an affirmative answer, they gave appellant's agent $32, which he agreed to deliver to appellee at Maryville by noon of that day, February 5, 1915. They paid the agent $1.16, the amount charged for making delivery of the money. They also told the

agent that appellee was sick. As to what was told the agent Miss Finfrock testified:

"I did tell this agent about the condition of my brother; that is, I told the man. I also told him at that time it was necessary for my brother to have the money at a particular time, and that he was sick and needed the money to come home on. We also told him my brother couldn't get medical attention in the town he was; that it was a small place; and in reply to that he simply made the statement that he would have the money there in time so he could make that evening train home."

On the night of February 5th the following message was sent to appellee by his father:

"Money follows tomorrow for ticket home. We shall be very glad to see you. Am sorry your health is bad but will soon have you well again. Will look for you next week."

Appellee testified as follows:

"In February, 1915, in the early part of it, I was in Maryville, Tenn., going to school there. Received an injury in January, 1915, which along in the first part of February resulted in blood poisoning in my left hand. At the time the blood poison started my financial condition was very low; do not know just how much money I did have, but not more than $2. I did communicate my financial condition to my parents, and received from them a telegram dated February 5th, which you handed me. I received this night letter on Saturday, February 6th. During the time I was expecting this money, well on Saturday the day I received this message it was, I spent the last cent I had because I expected it would be in, and I needed some things, some clean collars for one thing, and I went and bought some, and spent the last cent I had. While I was waiting for this money, I stayed with any of the boys that I could get to keep me, and I borrowed money off of several of the boys to buy meals with. I would borrow money off of the boys, and sometimes it was kind of hard to borrow it too. I would have difficulty at times borrowing money. My physical condition at the time, with the exception of my eyes, was all right. My eyes troubled me a great deal and then both my hands were in a bad condition. Guess I was all right otherwise. As to my hands, I had blood poisoning in this hand in three places (left hand) in the back of the hand, I had a bone felon on this thumb (right hand). Both hands were wrapped up all the time. I had no money with which to secure medical attention. In order to get proper medical attention, I would have to go to Knoxville; that being a town of some size. Maryville is only a small place, and they only have small town doctors. I went to both the doctors in Maryville, and they told me there was nothing wrong with my thumb, except that there was a hanging nail, and there was no use doing anything for that except to bandage it up and let it go. When I finally did get the money I got the bone scraped by a doctor at Knoxville. I had the nail taken off and had it treated, but I had then gotten the blood poisoning in my (left) hand pretty well along under control myself. I was embarrassed in a great many ways by reason of my financial condition when waiting for money and being without funds. I knew the folks had sent the funds to me, and it is not very pleasant to be without money to buy your meals with and pay your own board bill with, and it is kind of hard to go around among your friends and ask them."

The money was not delivered to the appellee by the appellant until February 12th, which was seven days after it had agreed and contracted to deliver it. We think the testimony before set out is sufficient to sus-

tain the finding that appellee suffered both physical pain and mental anguish as a result of appellant's failure to comply with its contract.

[2] Appellant's contention that mere disappointment or embarrassment is not such mental pain or anguish as will permit recovery of damages therefor is sound, and finds support in adjudicated cases. Telegraph Co. v. Chamberlain, 169 S. W. 370; De Voegler v. Telegraph Co., 10 Tex. Civ. App. 229, 30 S. W. 1107; Ricketts v. Telegraph Co., 10 Tex. Civ. App. 226, 30 S. W. 1105. But the evidence in this case justifies the conclusion that appellee suffered more than disappointment and embarrassment. His physical condition was such that it must have caused him physical suffering, and this suffering was prolonged because of his inability, on account of appellant's failure to comply with its contract, to procure proper medical attention. The fact that he was in this condition and needed this attention which he was unable to procure must have made his mental suffering exceed that of mere disappointment. The extent of appellee's physical and mental suffering was a question for the jury. While it is apparent from the amount of the verdict that the jury did not consider such suffering to have been very acute, we think its character was such as to entitle appellee to compensation therefor. Telegraph Co. v. Chilson, 168 S. W. 878; Goodwin v. Telegraph Co., 160 S. W. 107.

[3] The evidence shows that appellant at the time it made the contract knew appellee's condition and his need for the money, and the probable consequences of its delay in performing its contract must have been anticipated. In these circumstances it is liable to appellee for the injury caused him by its negligence.

It follows from what we have said that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.