## WESTERN UNION TELEGRAPH COMPANY v. M. S. WALLER.

### No. 3008.   Decided June 15, 1921.

### (232 S. W., 487.)

**1.—Telegraph—Negligence—Damages.**

The damages recoverable for mental suffering caused by negligent delay in delivering a telegram include such only as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of contract, or to have been in the contemplation of the parties when they made the contract as the probable result of the breach of it.  (P. 273).

**2.—Same—Case Stated.**

Plaintiff residing in Texas and his wife and step-daughter being in Colorado, the latter sent telegrams to him:    (1)  Announcing that his wife was in dangerous condition and was moved to a hospital in Denver for an operation.    (2)  On following day, that her condition was critical and big operation necessary.    (3)  On third day, announcing her death following critical operation.  The last message was promptly delivered; the others negligently delayed till after delivery of the third.  Plaintiff at once telegraphed to friends in Denver to furnish his step-daughter money and assistance, and started for Denver.  The charge of the court submitted as elements of mental suffering for which plaintiff might recover:  (1) that he was prevented from furnishing financial assistance to his wife and step-daughter at Denver.  (2)  that he was prevented from wiring them sooner that he was coming on the first train;  (3)  that the corpse of his wife was unprepared for burial for an unreasonable time.  *Held*:  that the suspense and fear of plaintiff was a reflex suffering in anticipation of the suffering of the step-daughter (for which she herself had already recovered)  and too remote and speculative to support actionable damages therefor.  And that delay in the preparation of the wife's body for burial was also not within reasonable contemplation of defendant by reason of the two first messages announcing merely her critical sickness.  (Pp. 269-274).

Question certified by the Court of Civil Appeals for the First District, in an appeal from Harris County.

*Hume & Hume* (Albert T. Benedict of Counsel) for appellant.

The court erred in paragraph four of its main charge, duly objected to, as shown by defendant's bill of exception to said main charge.  W. U. Tel. Co. v. Young, 130 S. W., 257; W. U. Tel. Co. v. Luck, 91 Texas, 178; W. U. Tel. Co. v. Edmundson, 91 Texas, 207; W. U. Tel. Co. v. Linn, 87 Texas, 7; W. U. Tel. Co. v. Motley, 87 Texas, 38; W. U. Tel. Co. v. Coffin, 88 Texas, 94; W. U. Tel. Co. v. Carter, 85 Texas, 580; W. U. Tel. Co. v. Wilson, 97 Texas, 22; W. U. Tel. Co. v. Kuykendahl, 99 Texas, 323; De Voegler v. W. U. Tel. Co. 30 S. W., 1107, 10 Texas Civ. App., 229; Ricketts v. W. U. Tel. Co., 30 S. W., 1105; Ratliff v. W. U. Tel. Co., 183 S. W., 78; W. U. Tel. Co. v. Chamberlain, 169 S. W., 370; W. U. Tel. Co.

v. Sherlin, 184 S. W., 310; S. W. Tel. & Tel. Co. v. Wilcoxson, 129
S. W., 868; W. U. Tel. Co. v. McNairy, 78 S. W., 969; 34 Texas
Civ. App., 389; W. U. Tel. Co. v. Steinbergen, 54 S. W., 829; 107
Ky., 469; W. U. Tel. Co. v. Vickery, 158 S. W., 794; Hancock v.
W. U. Tel. Co., 69 L. R. A., 405; W. U. Tel. Co. v. Birchfield, 38
S. W., 635; W. U. Tel. Co. v. Reed, 84 S. W., 296; 37 Texas Civ.
App., 445; S. W., Tel. & Tel. Co. v. Thomas, 185 S. W., 396;
Goodwin v. W. U. Tel. Co., 160 S. W., 107; W. U. Tel. Co. v. Mc-
Farlane, 161 S. W., 57.

*K. C. Barkley,* and *Woods, King & John,* for appellees.

On the question of the right to recover the damages alleged and
and proved by appellee and submitted by the court to the jury,
see the following: W. U. Tel. Co. v. Chilson, 168 S. W., 878;
Goodwin v. W. U. Tel. Co., 160 S. W., 107; W. U. Tel. Co. v. McFar-
lane, 161 S. W., 57; W. U. Tel. Co. v. Richards, 158 S. W., 1187;
W. U. Tel. Co. v. Simpson, 73 Texas, 430; S. W., Tel. & Tel. Co.
v. Pearson, 137 S. W., 736; Stuart v. Tel. Co., 66 Texas, 580;
Tel. Co. v. Cooper, 71 Texas, 507; Tel. Co. v. Richardson, 79 Texas,
649; Tel. Co. v. Rich, 126 S. W., 687; Tel. Co. v. Quigley, 112 S.
W., 897; S. W. Tel. & Tel. Co. v. Gehring, 137 S. W., 754.

On the question of the sufficiency of the testimony, see the fol-
lowing authorities: Tel. Co. v. Arant, 115 S. W., 138; Tel. Co. v.
Sloss, 100 S. W., 354; Postal Tel. Cable. Co. v. Telerico, 136 S. W.,
575; Cumberland Tel. & Tel. Co. v. Quigley, 112 S. W., 897;
Tel. Co. v. Bickerstaff, 138 S. W., 997.

Damage is to be inferred from the nature of the injury or wrong
suffered, rather than from the conduct or declaration of the plain-
tiff. See: W. U. Tel. Co. v. Adams, 75 Texas, 531; W. U. Tel. Co.
v. McLeod, 22 S. W., 991; W. U. Tel. Co. v. Porter, 26 S. W., 867.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.
The statement of the case is substantially as follows:

Defendant in error, his wife and stepdaughter had their dom-
icile and home in the city of Houston, Harris County, Texas.
His wife and stepdaughter Miss Genevieve Chilson were spending
the summer of 1906, or a part of it, in Denver, Colorado. On
August 29, 1906, defendant in error's wife was taken suddenly and
dangerously ill, and on the night of said date his stepdaughter,
Miss Chilson, delivered to plaintiff in error for transmisson to
defendant in error the following telegram:

"Denver, Colorado, Aug. 29th, 1906, Judge M. S. Waller, 22 and
23 Masonic Temple, El Paso, Texas.

Moved Mama to hospital tonight. Will operate tomorrow, very
dangerous condition, blood poisoning, wire money immediately, am
very worried. Genevieve."

The next day, August 30, 1906, defendant in error's stepdaughter delivered another telegram to plaintiff in error, as follows:

"Denver, Colorado, Aug. 30th, 1906. Judge M. S. Waller, Room 22 Masonic Temple, El Paso, Texas.

Doctor obliged to perform big operation to save Mama's life, very critical condition, come at once. Genevieve."

At about three o'clock of the afternoon of August 30th, plaintiff in error's agents at El Paso agreed with associates of defendant in error to forward said messages to defendant in error at Marfa. This they failed to do.

Defendant in error's wife died at eight o'clock A. M. August 31st, and his stepdaughter delivered to plaintiff in error the following message for transmission:

"Denver, Colorado, August 31st, 1906. M. S. Waller, Marfa or Forward.

Mother had serious operation yesterday. Died this morning. Genevieve Chilson."

Defendant in error received this telegram in due time about noon August 31st, and immediately wired to friends in and near Denver to go at once to the assistance of his said wife and stepdaughter, which they promptly did. He also immediately telegraphed to his stepdaughter at Denver that he had telegraphed to friends in and near Denver to furnish her with money and all other assistance necessary and proper, and that he would go to her on the first train.

There was only one train a day from Marfa to El Paso, and defendant took the first train out at about midnight August 31st for El Paso and thence to Denver, arriving at Denver about seventy-two hours later. While in El Paso he inquired at plaintiff in error's office, and received the two first messages mentioned above.

The certificate of the Court of Civil Appeals states, and it is fully borne out in the testimony, that before receiving answer from defendant in error and pending word from him, defendant in error's wife and stepdaughter were ministered to at Denver and received from others all necessary assistance and attention, except that there was delay in preparing the body for burial.

Defendant in error brought suit in the District Court of Harris County against plaintiff in error for damages to himself for mental pain and suffering caused by the negligence of plaintiff in error in not forwarding and delivering the two first messages set out herein, alleging that his wife and stepdaughter were among strangers at Denver and on account of said negligence of the plaintiff in error he was prevented from furnishing financial assistance to them; that he was prevented from wiring his said wife that he had received said message and was going to her on the first train; and he also alleged that the corpse of his said wife was unprepared for burial at Denver for an unreasaonble length of time.

On the trial of the case in the District Court facts were developed supporting defendant in error's allegations.

No liability was charged upon the third message, notifying defendant in error of the death of his wife, as it appears to have been promptly delivered; and upon his wiring friends in Denver arrangements were made for the embalming and preparing for burial of his said wife, same not being begun, however, until some twelve hours after her death.

Negligence was admitted on the part of plaintiff in error in failing to deliver the two first messages, but its contention was that the elements of damage submitted in the court's charge as grounds for recovery by defendant in error in his own right were not actionable or recoverable; that the mental anguish alleged was not the proximate result of plaintiff in error's negligence; and that the damages were too remote, contingent, uncertain and speculative and not within the contemplation of the parties.

The fourth paragraph of the court's main charge is as follows:

"If you believe from the evidence that the defendant's agent at El Paso, Texas, agreed with the associates of plaintiff, or with either of them, in his office at El Paso, that it would re-wire and forward the two messages from plaintiff's said stepdaughter to plaintiff, offered in evidence, of dates, respectively, August 29 and 30, 1906, to plaintiff at Marfa, and that it failed to do so, and that such failure was negligence as that term has been hereinbefore defined to you, and that such failure prevented plaintiff from furnishing financial assistance to his wife at Denver, and that plaintiff was prevented from wiring his said wife that he had received said messages and was going to her on the first train, if you should believe that if he had received said messages he would have supplied his said wife with money, and would have wired her that he was going to Denver on the first train, and that he would have done so, and if you further believe that because of the failure on the part of defendant's agent at El Paso to re-wire and forward said messages to Marfa, Texas, if you believe that it promised and failed to do so, and if you further believe that the corpse of plaintiff's said wife was unprepared for burial at Denver for an unreasonable length of time, and if you further believe that because of such facts, if the facts you so find to be, plaintiff suffered grief or mental anguish, and if you further believe that the defendant should have contemplated that if said messages were not delivered plaintiff would suffer such grief or mental anguish, then you will find in favor of plaintiff and assess his damages in such sum as you may believe from the evidence will reasonably and fairly compensate him for such grief and mental anguish, if any, suffered by him."

The jury returned a verdict for defendant in error for $1100.00. The Court of Civil Appeals for the First District affirmed the

judgment, but upon rehearing a majority of that court held that the "damages alleged and proven were not recoverable, because too remote, contingent, uncertain and speculative, and that to allow recovery therefor would extend the mental anguish doctrine in Texas beyond its legitimate confines." Whereupon the Court of Civil Appeals for the First District certified to us the following question of law:

"Were the damages thus alleged and proven in this case improper elements of damage, too remote, contingent, uncertain, and speculative to be recoverable?"

The elements of damage submitted in the court's charge were: (1) Defendant in error was prevented from furnishing financial assistance to his wife and stepdaughter at Denver; (2) that he was prevented from wiring his wife and stepdaughter that he had received the messages and was going to them on the first train; and (3) that the corpse of defendant in error's wife was unprepared for burial at Denver for an unreasonable length of time.

The case of Western U. Telegraph Company v. Edmondson, 91 Texas, 207, 42 S. W., 549, discloses the following facts:

The Telegraph Company negligently delayed the delivery of a telegram to Mrs. Edmondson informing her of the serious illness of her father. She was caused thereby to miss a train and to lose twenty-four hours in reaching his home. She learned of his death upon arriving at Clifton.

"The father of Mrs. Edmondson died on the afternoon of July 27th, before the telegram reached Brenham, and was buried on the afternoon of July 28th, before she could have arrived at his home if the telegram had been promptly delivered.

"Mrs. Edmondson left Gay Hill at 11:37 a. m. July 29th, and arrived at Clifton at 5 p. m. of that day and by private conveyance reached her father's home at 9 or 10 o'clock that night. She first heard of her father's death when she arrived at Clifton. If the message had been promptly delivered she would have heard of his death twenty-four hours earlier. Mrs. Edmondson suffered much mental anguish on account of the suspense in not being able to hear what her father's condition was. The suit is brought for the damages arising from the mental suffering occasioned by the suspense in not knowing the condition of her father during the time that she was delayed."

The following quotation from that case we think is illuminative of the question here involved:

"It is not true that a party is entitled to recover damages for all mental anguish which he may suffer in consequence of a failure on the part of the Telegraph Company to deliver a message entrusted to it for his benefit, but the measure of his recovery must be determined by the general rule of law which applies to all cases of breach of

contract, which rule so far as applicable to this case is thus expressed:
'When two parties have made a contract which one of them has
broken, the damages which the other ought to receive in respect of
such breach of contract should be such as may fairly and reasonably
be considered as arising naturally, i. e., according to the usual course
of things, from such breach of contract itself or as may reasonably
be supposed to have been in the contemplation of the parties at the
time that they made the contract as the probable result of the breach
of it.'' Tested by this rule the plaintiff was not entitled to recover
for the suspense and mental anguish of his wife arising from the
fact that she was was not informed of the condition of her father
between the time of receiving the message and her arrival at Clifton,
because the telegram itself, considered from the standpoint of the
Telegraph Company, would not indicate that a failure to deliver it
in due time would produce any such result; that is, the suspense
and mental anguish claimed to have existed cannot fairly and rea-
sonably be considered as arising naturally and in the usual course
of things from the failure to deliver the message; nor can it be
reasonably supposed that the parties at the time they made the
contract had in contemplation that in case it was not promptly de-
livered Mrs. Edmondson would suffer such anxiety and suspense
because of the fact that she did not know whether her father was
dead or alive. The company was notified as a matter of law by the
terms of the telegram that in case it failed to deliver it according
to its undertaking or to exercise ordinary and reasonable care to
do so, the party addressed might fail to reach the father in time
to be with him during his sickness and might in case of his death
fail to reach his home in time to be at his funeral, and that such
failure would produce in the ordinary course of things mental an-
guish. Tel. Co. v. Carter, 85 Texas, 580; Loper v. Tel. Co., 70
Texas, 690. This can reasonably be supposed to have been within
the contemplation of the parties at the time they made the con-
tract and it is for such results that the law holds the Telegraph Com-
pany liable for damages. In other words, whatever may arise in
the usual course of things from the failure to accomplish the pur-
pose indicated by the terms of the message may be considered with-
in the contemplation of the parties at the time the contract was
made as being the probable result of the breach of it, and for this
the party who fails to comply is held responsible. Tel. Co. v. Stiles,
89 Texas, 312.

''The mental anguish, anxiety and suspense suffered by Mrs. Ed-
mondson was incident to the failure of the company to deliver the
message, but was not one of the natural and usual results of such
failure; and the claim based thereon does not come within the gen-
eral rule laid down for ascertaining the liability of parties for
breach of contracts, nor does it come under any rule announced by
111 Tex.—18

this court, and we have neither authority nor inclination to extend the right of recovery in this class of cases beyond the limits already fixed by the decisions of this court.''

Defendant in error's suffering was from suspense or fear that his wife and stepdaughter had suffered or would suffer for want of funds and that they had suffered or would suffer from not hearing from him and from not knowing whether or not he was coming to them.

In the natural order of things it ought to have been anticipated by plaintiff in error that the sender of the telegrams, defendant in error's stepdaughter, and his wife, might suffer mental pain from not receiving funds asked for in the messages. For this defendant in error's stepdaughter, Miss Chilson, recovered. Western U. Tel. Co. v. Chilson, 168 S. W., 878. But the suspense and fear of plaintiff was reflex suffering in anticipation of their suffering and too remote and speculative to support actionable damage therefor.

The same reasons would apply to the delay in preparation of defendant in error's wife for burial.

It is to be observed in this connection that the telegram announcing her death was delivered promptly and that thereupon by wire he instructed friends to arrange for preparing her body for burial, which was done.

It is argued that if the first two messages had been promptly delivered announcing the illness of defendant in error's wife, the delay of twelve hours in arranging for the preparation of the body for burial would not have occurred.

We cannot say that that was in the reasonable contemplation of the parties.

When the two messages were sent and should have been delivered, the wife had not died. While it is quite probable, and we think the testimony would justify the presumption, that defendant in error would have provided fully for the necessities of his wife and stepdaughter and have summoned to their aid his loyal friends at or near Denver, yet plaintiff in error was charged only with notice of facts and consequences naturally arising from the wording of the two messages.

It would be unreasonable to hold that the two telegrams announcing the illness of defendant in error's wife would embody notice to defendant in error of his wife's death and that he should arrange for her body to be prepared for burial. This could not be held to have been in the contemplation of the contract to deliver the sick messages, and would be too remote and speculative for recovery herein.

. Our answer to your question is in accord with the majority opinion of your Honorable Court to the effect that the elements of damage submitted to the jury by the trial court are not actionable under the rules of law applicable thereto.